UNITED STATES OF AMERICA

v.

**Randy ORR, Appellant**

**No. 01–4127.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Nov. 19, 2002.

Filed Dec. 9, 2002.

---

142

W. Penn Hackney, Karen S. Gerlach, Renee Pietropaolo, Office of the Federal Public Defender, Pittsburgh, PA, for Appellant.

Bonnie R. Schlueter, Assistant U.S. Attorney, Office of the United States Attorney, Pittsburgh,PA, and Marshall J. Piccinini, Assistant U.S. Attorney, Office of the United States Attorney, Erie, PA, for Appellee.

Before BARRY, AMBRO, Circuit Judges, and ACKERMAN,* District Judge.

## OPINION OF THE COURT

BARRY, Circuit Judge.

Appellant Randy Orr pled guilty to one count of use of a dangerous weapon in connection with bank robbery, pursuant to 18 U.S.C. § 2113(d), and was sentenced, as relevant here, to 50 months imprisonment. He now appeals. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and will affirm.

### I.

On February 2, 2001, Orr single-handedly committed armed robbery of a PHB Employees Federal Credit Union in Fairview, Pennsylvania, carrying what appeared to be a black handgun. After entering the bank, Orr told the manager to kneel, face the wall, and put her hands on her head. He then held his gun to the

---

* The Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

head of the assistant manager and directed her to empty a metal cash box into a garbage bag. He left with $65,468.00.

With the cooperation of a friend of Orr's, the government obtained a recorded confession. The cooperating witness also reported that Orr owned a pellet gun that resembled a handgun, and witnesses to the bank robbery reported that he had carried a black handgun. Orr was indicted on two counts and pled guilty to the count that charged use of a dangerous weapon in connection with bank robbery, with the other count subsequently dismissed.

■ On November 1, 2001, Orr was sentenced to 50 months imprisonment, based in part on a four-level enhancement pursuant to § 2B3.1(b)(2)(D) of the U.S. Sentencing Guidelines for having "otherwise used" a "dangerous weapon." He raised two objections: (1) the pellet gun he used in the robbery was not a "dangerous weapon," and (2) he had not "otherwise used" but had merely "brandished" the gun and, therefore, he should not have received the four-level enhancement. The District Court rejected both objections, and they are properly before us now. We review the District Court's interpretation of the sentencing guidelines *de novo*. *United States v. Johnson*, 199 F.3d 123, 125 (3d Cir.1999).

## II.

Orr first argues that the guidelines preclude application of a four-level enhancement for "otherwise used" under § 2B3.1(b)(2)(D) when the object employed in the robbery appears to be but is not a dangerous weapon. Orr used what appeared to be a functioning handgun but was, in fact, a dismantled pellet gun.

Orr's argument rests on the purported contradiction between the definition of objects that appear to be but are not "dan-

gerous weapons" in § 1B1.1 and in § 3B3.1. A pellet gun, while not a firearm, is by definition a "dangerous weapon." § 1B1.1, Commentary, Application Note 1(e) (2001). Orr concedes that the dismantled pellet gun *appeared* to be a "dangerous weapon," but contends that because it was dismantled, it was not so in fact.

■ But a dismantled pellet gun is a dangerous weapon in its own right. In this connection, the government argues that even the frame of the pellet gun could inflict serious injury if wielded as a weapon. *See McLaughlin v. United States*, 476 U.S. 16, 17–18, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986) (holding that an unloaded gun was a "dangerous weapon" within the meaning of the federal bank robbery statute partly due to potential harm when used as a bludgeon). We agree and hold that a dismantled pellet gun which could be used as a bludgeon is a "dangerous weapon" within the meaning of § 1B1.1.

Even if we were to conclude that a dismantled pellet gun only appears to be a "dangerous weapon," however, § 1B1.1, the general definitional section, defines "dangerous weapon" to include any object that "closely resembles" or "create[s] the impression" of being "an instrument capable of inflicting death or serious bodily injury." § 1B1.1, Application Note 1(d) (2001). Section 2B3.1 contains at Application Note 2 the seemingly duplicative provision that, consistent with § 1B1.1, "an object shall be considered to be a dangerous weapon for purposes of subsection (b)(2)(E) [concerning "brandishing"] if . . . the object closely resembles . . . or . . . [was] used . . . in a manner that created the impression that the object was an instrument capable of inflicting death or serious bodily injury." Section 2B3.1 is silent, however, as to whether such an object should be considered a dangerous weapon for purposes of § 2B3.1(b)(2)(D), concern-

ing "otherwise used." Orr argues that the narrower definition of "dangerous weapon" contained in § 2B3.1 contradicts and, therefore, replaces the general definition in § 1B1.1. Thus, the argument goes, an object that merely appears to be a dangerous weapon can only be "brandished" under § 2B3.1(b)(2)(E); it cannot satisfy the definition of "otherwise used" under § 2B3.1(b)(2)(D).

■ The difficulty with this argument is that § 1B1.1 provides at Application Note 1 that its definitions "are of general applicability ... except to the extent *expressly modified* in respect to a particular guideline or policy statement" (emphasis added). Application Note 1 to § 2B3.1 specifically states that "dangerous weapon" is defined in the Application Notes to § 1B1.1. An omission in the partial restatement of that definition in Application Note 2 to § 2B3.1 does not expressly circumscribe the general definition, especially in light of the recognition in Application Note 2 to § 1B1.1 that "[d]efinitions of terms also may appear in other sections." It is much more likely that Application Note 2 to § 2B3.1 focuses on reminding district courts to apply the expansive definition of "dangerous weapon" in § 1B1.1.

The Court of Appeals for the Eleventh Circuit rejected Orr's precise argument in *United States v. Miller*, 206 F.3d 1051 (11th Cir.2000). The Court held that the District Court did not plainly err in finding that the defendant "otherwise used" a "dangerous weapon" and thus qualified for the four-level enhancement pursuant to § 2B3.1(b)(2)(D), although the weapon in question was an inert bomb. The Court interpreted the guidelines to uniformly treat objects appearing to be dangerous weapons as if they were in fact dangerous weapons for sentence enhancement purposes. *Id.* at 1052.

We agree. Application Note 1(d) of § 1B1.1 clearly instructs that objects that appear to be dangerous weapons shall be considered dangerous weapons for purposes of § 2B3.1.

Orr's second argument is that his weapon was merely "brandished" in the course of the robbery, justifying a three-level enhancement under § 2B3.1(b)(2)(E), rather than "otherwise used," warranting a four-level enhancement under § 2B3.1(b)(2)(D). Section 2B3.1 incorporates not only § 1B1.1's definition of "dangerous weapon" but also its definitions of "brandished" and "otherwise used." § 2B3.1, Application Note 1. "Brandished" means that "all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person." § 1B1.1, Application Note 1(c). "Otherwise used" means that the conduct "did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." § 1B1.1, Application Note 1(f).

■ The question, then, which must be answered is this: when does conduct constituting brandishing become sufficiently threatening such that the weapon was "otherwise used?" Our previous decisions suggest the answer. In *United States v. Johnson*, we found that the defendant had "otherwise used" a firearm by pointing a gun at the victim, threatening to shoot, and demanding her money. 931 F.2d 238, 240 (3d Cir.1991). In an identically-named decision eight years later, we found that the defendants had "otherwise used" a dangerous weapon when a co-defendant told an employee to put down her phone, raised a baseball bat, and threatened to

harm or kill her with it.* *United States v. Johnson,* 199 F.3d 123 (3d Cir.1999). In dicta, we noted our agreement with the Court of Appeals for the First Circuit that "specifically leveling a cocked firearm at the head or body of a bank teller or customer, ordering them to move or be quiet according to one's direction, is a cessation of 'brandishing' and the commencement of 'otherwise used.'" *Id.* at 127, quoting *United States v. La Fortune,* 192 F.3d 157 (1st Cir.1999). Furthermore, "[p]ointing a weapon at a specific person or group of people, in a manner that is explicitly threatening, is sufficient to make out 'otherwise use' of that weapon," regardless of whether that weapon is a firearm. *Id.* While we left open the question of whether such an explicit threat must be made verbally or might be made through conduct alone, Orr concedes that either will do.

■ Consonant with these decisions, the District Court correctly found that pointing a gun at the head of the assistant manager and ordering her to empty money into a garbage bag was a "specific threat" directed at her and was precisely the type of conduct which satisfies the "otherwise used" requirement. Neither the guidelines nor the caselaw requires infliction of the violent physical contact Orr suggests or a verbalized threat to harm the victim in order to constitute "otherwise used."

Other courts of appeals have reached similar conclusions on similar facts. *See, e.g., United States v. Wooden,* 169 F.3d 674, 676 (11th Cir.1999) (pointing a handgun at the victim's head one-half inch away constituted "otherwise use"); *United States v. Taylor,* 135 F.3d 478, 482–83 (7th Cir.1998) (poking a gun into the bank employee's back while directing her to pro-

duce money was "otherwise use" of that weapon); *United States v. Elkins,* 16 F.3d 952, 953–54 (8th Cir.1994) (forcing a bank patron at knife-point to enter the bank parking lot and surrender the car keys was "otherwise use"); *United States v. Roberts,* 898 F.2d 1465, 1470 (10th 1990) (placing a knife against the victim's throat from behind while demanding money at the automatic teller machine constituted "otherwise use").

### III.

For the foregoing reasons, we will affirm the judgment of the District Court.

---

\* The 1991 and 1999 Johnson cases interpreted an earlier version of the guidelines, in which "brandished" was defined to mean that "the weapon was pointed or waved about, or displayed in a threatening manner." The definition of "brandished" we used in those cases is consistent with the definition under the current guidelines.