**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.

FREDERICK BENDTZEN,
           *Defendant-Appellant.*

No. 07-50249

D.C. No.
CR-06-00214-CAS

OPINION

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted
May 5, 2008—Pasadena, California

Filed September 5, 2008

Before: Kim McLane Wardlaw and Sandra S. Ikuta,
Circuit Judges, and Jeremy D. Fogel,* District Judge.

Opinion by Judge Wardlaw

*The Honorable Jeremy D. Fogel, United States District Judge for the Northern District of California, sitting by designation.

12317

**COUNSEL**

Sean K. Kennedy, Gia Kim, Federal Public Defenders, Los Angeles, California, for defendant-appellant Frederick Bendtzen.

Thomas P. O'Brien, Christine C. Ewell, Christopher K. Lui, United States Attorneys, Los Angeles, California, for plaintiff-appellee United States of America.

**OPINION**

WARDLAW, Circuit Judge:

Frederick Bendtzen pled guilty to bank robbery, in violation of 18 U.S.C. § 2113(a), and was sentenced to eighty-months imprisonment, twelve months below the low-end Guidelines range of ninety-two months, followed by three years of supervised release. Bendtzen appeals the upward adjustment to his offense level pursuant to U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2B3.1(b)(2) (2005), which provides for a four-level increase where "a dangerous weapon was otherwise used," arguing that because he used only a fake bomb, he did not use a dangerous weapon within the meaning of § 2B3.1. He also contends that his criminal history score overrepresented his criminal past and that the district court erred by placing him in category VI. Because we conclude that the district court correctly calculated Bendtzen's Guideline sentence and that the sentence imposed was reasonable, we affirm.

## I. Background

On March 2, 2006, Bendtzen entered the Santa Barbara Bank and Trust and handed one of the tellers a note, which read: "This is a robbery. I have a bomb on me, hand over all you have or boom. No exploding money! I have a friend outside with same trigger. Wait 3 minutes before doing anything else or boom!!" The teller gave Bendtzen $3,475 from her drawer. Bendtzen then placed what appeared to be a bomb on the counter of the bank teller's window. He pretended to press the detonator. After instructing the teller to wait four minutes before doing anything, Bendtzen fled the bank. The Santa Barbara police responded to the bank's alarm with a bomb squad, which removed the device and destroyed a clock that looked like a detonator. Bendtzen was readily identified through the bank surveillance photos of the robbery and was arrested shortly thereafter.

Bendtzen was indicted for bank robbery, in violation of 18 U.S.C. § 2113(a). On September 27, 2006, he entered a guilty plea. The Probation Office recommended a Guideline sentence of 92 to 115 months, based on a base offense level of twenty, a two-level upward adjustment for robbing a financial institution, a four-level upward adjustment for otherwise using a dangerous weapon, and a three-level downward adjustment for acceptance of responsibility. The Probation Office also calculated sixteen criminal history points, placing Bendtzen in criminal history category VI.

At sentencing, Bendtzen argued that the four-level adjustment for otherwise using a dangerous weapon does not apply to fake weapons, that the Guidelines language was at best ambiguous and the rule of lenity should apply, and that his criminal history calculation was unreasonable. The district court concluded that by the plain language of the Guidelines, the four-level enhancement applied to both real and fake weapons. The court also found that, although the Probation Office's criminal history calculation did take into account

many minor crimes, it also failed to consider many serious criminal convictions that were outside the ten-year window, including probation violations; DUIs; possessing, manufacturing, or selling a dangerous weapon; receipt of known stolen property; burglary; battery; and others. Therefore, the court determined, in light of the factors enumerated in 18 U.S.C. § 3553(a), that an eighty-month sentence was appropriate. Bendtzen timely appeals.

## II.  JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 18 U.S.C. §§ 1291, 3742(a). We review de novo the district court's interpretation of the Sentencing Guidelines. *United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006). We review the sentence imposed for an abuse of discretion. *Untied States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). We will reverse the sentence only where it was procedurally erroneous or substantively unreasonable. *Id.*

## III.  ANALYSIS

## A.  The Sentencing Guidelines' Definition of "Dangerous Weapon"

**[1]** U.S.S.G. § 2B3.1(a) provides that the Base Offense Level for Robbery is twenty. Subsection (b)(2) describes the specific offense characteristics related to the use of a weapon during the robbery:

> (A) If a firearm was discharged, increase by 7 levels; (B) if a firearm was otherwise used, increase by 6 levels; (C) if a firearm was brandished or possessed, increase by 5 levels; (D) if a dangerous weapon was otherwise used, increase by 4 levels; (E) if a dangerous weapon was brandished or possessed, increase by 3 levels; or (F) if a threat of death was made, increase by 2 levels.

U.S.S.G. § 2B3.1(b)(2). The district court increased Bendt-
zen's sentence under § 2B3.1(b)(2)(D), concluding that the
fake bomb used by Bendtzen falls within the Guidelines defi-
nition of "dangerous weapon."

**[2]** The general definition of "dangerous weapon" is set
forth in the Commentary to U.S.S.G. § 1B1.1—the Applica-
tion Instructions. *See* U.S.S.G. § 2B3.1 cmt. n.1 (2005) (refer-
ring the reader to Application Note 1(D) of § 1B1.1 for the
definition of "dangerous weapon"). Before the year 2000, the
term "dangerous weapon" was defined as "an instrument
capable of inflicting death or serious bodily injury." U.S.S.G.
§ 1B1.1 cmt. n.1(d) (1998). The Guidelines commentary
directly addressed the use of a weapon that appeared to be
dangerous, but in fact was not, instructing: "Where an object
that appeared to be a dangerous weapon was brandished, dis-
played, or possessed, treat the object as a dangerous weapon."
*Id.* Thus, before the 2000 amendments to the definition of
"dangerous weapon," a court could adjust the offense level by
only three levels and only where the fake weapon was bran-
dished, displayed, or possessed. "Otherwise using" a weapon
that appeared to be dangerous, but was not, could not serve
as the basis for a four-level adjustment.

**[3]** This was changed when the Sentencing Commission
amended the general definition of "dangerous weapon." The
Sentencing Commission redefined "dangerous weapon" as

> (i) an instrument capable of inflicting death or seri-
> ous bodily injury; or (ii) an object that is not an
> instrument capable of inflicting death or serious bod-
> ily injury but (I) closely resembles such an instru-
> ment; or (II) the defendant used the object in a
> manner that created the impression that the object
> was such an instrument (*e.g.*, a defendant wrapped a

hand in a towel during a bank robbery to create the appearance of a gun).[1]

U.S.S.G. § 1B1.1 cmt. n.1(D) (2005).

According to the Sentencing Commission, the purpose of the amendment was

> to clarify under what circumstances an object that is not an actual, dangerous weapon should be treated as one for the purposes of the guideline application. The amendment is in accord with the decisions in *United States v. Shores*, 966 F.2d 1383 (11th Cir. 1992) (toy gun carried but never used by a defendant qualifies as a dangerous weapon because of its potential, if it were used, to arouse fear in victims and dangerous reactions by police or security personnel) and *United States v. Dixon*, 982 F.2d 116 (3rd Cir. 1992) (hand wrapped in a towel qualifies as a dangerous weapon if the defendant's actions created the impression that the defendant possessed a dangerous weapon).

U.S.S.G. Supp., App. C, vol. II, amend. 601 (2002).

**[4]** The 2000 amendment, however, went beyond merely clarifying the definition of "dangerous weapon." In particular, by building a direct reference to fake weapons into the general definition, without any reference to brandishing or possession, the 2000 amendment applies to both the three- and the four-level adjustments. Therefore, whereas before the year 2000

---

[1]"The [2000] amendment also delete[d] the term 'displayed' wherever it appears in the Guidelines Manual in an enhancement with 'brandished.' Because 'brandished' applies in any case in which 'all or part of the weapon was displayed,' the Commission determined that inclusion of 'displayed' in the[ ] enhancements is redundant. This part of the amendment [was] not intended to make a substantive change to the guidelines." U.S.S.G. Supp., App. C, vol. II, amend. 601.

the use of a fake weapon could qualify only for a "brandish-ing or possessing" adjustment, after the 2000 amendments it qualifies for all "dangerous weapon" adjustments. *Compare* U.S.S.G. § 1B1.1 cmt. n.1(d) (1998), *with* § 1B1.1 cmt. n.1(d) (2000).

**[5]** Bendtzen makes an argument—which we agree with the district court is interesting but ultimately unpersuasive—that the distinction between "brandishing" and "otherwise using" a dangerous weapon, where the use of a fake weapon can qualify for the former but not the latter adjustment, survives the 2000 amendments. In support of this argument, Bendtzen points to the revised Commentary to § 2B3.1, which reads in relevant part:

> Consistent with Application Note 1(d)(ii) of § 1B1.1 (Application Instructions), an object shall be considered to be a dangerous weapon for purposes of [the three-level "brandishing" adjustment] if (A) the object closely resembles an instrument capable of inflicting death or serious bodily injury; or (B) the defendant used the object in a manner that created the impression that the object was an instrument capable of inflicting death or serious bodily injury (*e.g.*, a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun).

U.S.S.G. § 2B3.1 cmt. n.2 (2005). This definition is identical to the general definition of "dangerous weapon," but only references the three-level "brandishing" adjustment. Thus, Bendtzen argues that this narrower definition applies, and, accordingly, the use of a fake weapon can qualify only for the three-level adjustment.

**[6]** However, applying this narrower definition of "danger-ous weapon" is prohibited by the Guidelines. The expansive definition is "of general applicability . . . except to the extent *expressly modified* in respect to a particular guideline or pol-

icy statement." U.S.S.G. § 1B1.1 cmt. n.1 (emphasis added). The narrower definition does not expressly modify the general definition. *See United States v. Orr*, 312 F.3d 141, 144 (3d Cir. 2002) ("An omission in the partial restatement of [Application Note 1(d) to § 1B1.1's definition of dangerous weapon] in Application Note 2 to § 2B3.1 does not expressly circumscribe the general definition, especially in light of the recognition in Application Note 2 to § 1B1.1 that "[d]efinitions of terms also may appear in other sections.") (second alteration in original). To the contrary, the narrow definition's prefatory clause states that it is "*[c]onsistent with* Application Note 1(d)(ii) of § 1B1.1"—the general definition of "dangerous weapon." U.S.S.G. § 2B3.1 cmt. n.2 (emphasis added). We therefore decline to read the narrow definition of "dangerous weapon" as overriding the general definition.

**[7]** Bendtzen points out that the prefatory clause to the revised Commentary, which explicitly incorporates the general definition, creates a redundancy. "It is a well-established principle of statutory construction that 'legislative enactments should not be construed to render their provisions mere surplusage.' " *Am. Vantage Cos., Inc. v. Table Mountain Rancheria*, 292 F.3d 1091, 1098 (9th Cir. 2002) (quoting *Dunn v. Commodity Futures Trading Comm'n*, 519 U.S. 465, 472 (1997)). Under Bendtzen's view, to avoid construing the revised definition as a mere redundancy, it must be read as limiting the general definition of "dangerous weapon" as applying only to the three-level "brandishing" adjustment.

**[8]** Like most rules of statutory interpretation, the canon of statutory construction upon which Bendtzen relies is not an absolute principle. An unnecessary provision within a statute, "inserted out of an abundance of caution[, is] a drafting imprecision venerable enough to have left its mark on legal Latin (*ex abundanti cautela*)." *Fort Stewart Sch. v. Fed. Labor Relations Auth.*, 495 U.S. 641, 646 (1990). It is likely that the narrow definition was inserted out of excess caution to ensure that district courts would apply the new, general

definition of "dangerous weapon" when applying the three-level "brandishing" adjustment. *See Orr*, 312 F.3d at 144 ("It is . . . likely that Application Note 2 to § 2B3.1 focuses on reminding district courts to apply the expansive definition of "dangerous weapon" in § 1B1.1.").

**[9]** We conclude that the general definition of "dangerous weapon," which includes objects that appear to be dangerous weapons, applies to both the three-level "brandishing" adjustment as well as the four-level "otherwise used" adjustment. The district court correctly found that Bendtzen "otherwise used" a fake bomb. The parties do not—indeed they cannot—dispute that Bendtzen's conduct was more culpable than mere "brandishing." His use of the fake bomb was intended to and did have a coercive effect *and* aroused fear and panic in the bank. He threatened to kill the bank teller by pretending to press a detonator and leaving the fake bomb on the teller's counter. The use of the fake bomb required the resources of the city to ensure the public safety exactly as a real bomb would have required. Indeed, to ensure the safety of the bank's employees and others, the Santa Barbara Police bomb squad evacuated the bank and used a robot to remove the device, which was then destroyed. Bendtzen's conduct is virtually indistinguishable from that of the defendant's in *United States v. Miller*, 206 F.3d 1051, 1052 (11th Cir. 2000), who used a fake bomb to rob a bank. In *Miller*, the Eleventh Circuit held that "lighting the fuse [of a fake bomb] is like the cocking of a handgun," and thus it constitutes "otherwise us[ing]" a fake bomb. *Id.* at 1054. Because Bendtzen "otherwise used" an object that closely resembled an instrument capable of inflicting death or serious bodily injury—a fake bomb—when he robbed the Santa Barbara Bank and Trust, the district court did not err in applying the four-level adjustment to his offense level.

**[10]** We also reject Bendtzen's argument that, because these Guidelines provisions create an ambiguity, the rule of lenity should apply. *See United States v. Fuentes-Barahona*,

111 F.3d 651, 653 (9th Cir. 1997) (per curiam) (holding that the rule of lenity applies to the Sentencing Guidelines as well as to penal statutes). The rule of lenity is applicable only where "there is a grievous ambiguity or uncertainty in the language and structure of [an] Act, such that even after a court has seize[d] every thing from which aid can be derived, it is still left with an ambiguous statute." *Chapman v. United States*, 500 U.S. 453, 463 (1991) (second alteration in original, internal quotation marks and citations omitted); *see also United States v. Technic Servs., Inc.*, 314 F.3d 1031, 1052 (9th Cir. 2002) (noting that application of the rule of lenity is appropriate only if the Guidelines are "truly ambiguous"). Here, although Bendtzen advanced an argument that, if accepted, might create an ambiguity where none otherwise exists, it remains the case that, simply read, the definition of "dangerous weapon" uniformly applies to both the "brandishing" and "otherwise using" adjustments. Because the plain meaning of these Guidelines provisions is clear, the rule of lenity is inapplicable.

## B. Reasonableness of Bentdzen's Sentence

Bendtzen argues that the sentence imposed by the district court was unreasonable because it did not take into account the overstated nature of his criminal history score. Bendtzen points out that three of his convictions were a month shy of falling beyond the ten-year window at the time he committed the instant offense and that they were each of a minor nature. The Government responds that a below-Guidelines sentence should be presumed reasonable and that even without the presumption, Bendtzen's sentence is reasonable.

**[11]** In *Carty*, we clarified that "[o]n appeal, we first consider whether the district court committed significant procedural error, then we consider the substantive reasonableness of the sentence." 520 F.3d at 993. We explicitly rejected any presumption of reasonableness for within-Guidelines sentences. *Id.* at 988.

**[12]** "It would be procedural error for a district court to fail to calculate—or to calculate incorrectly—the Guidelines range; to treat the Guidelines as mandatory instead of advisory; to fail to consider the § 3553(a) factors; to choose a sentence based on clearly erroneous facts; or to fail adequately to explain the sentence selected . . . ."[2] *Carty*, 520 F.3d at 993. Bendtzen's sentence was correctly calculated. The district court properly counted "[a]ny . . . prior sentence that was imposed within ten years of the defendant's commencement of the instant offense." U.S.S.G. § 4A1.2(e)(2) (2005). In addition, the district court did not treat the Guidelines as mandatory; indeed, it imposed a sentence below the Guidelines range. Further, the district court carefully considered the § 3553(a) factors, and imposed a sentence that was sufficient, but not greater than necessary, to achieve the goals of sentencing.[3] Finally, the court's explanation for the sentence is more than adequate. Following arguments from counsel, the court explained that Bendtzen had "a serious criminal history situation," but had "suffered from extreme childhood abuse," was "extremely remorseful," had drug and alcohol problems that contributed to the offense, and had "very supportive parents." The district court also reasoned on the record that an eighty-month sentence would serve as much of a deterrent as a sentence within the Guidelines range. Finally, the court rejected Bendtzen's argument that his criminal history was overrepresented because he had committed several serious crimes that were not counted, balancing out the aged and minor nature of some of the counted convictions. *See Rita v. United States*,

---

[2]Bendtzen does not challenge any of the district court's findings as clearly erroneous.

[3]At Bendtzen's sentencing hearing, the district court stated:

> [I]n this case it seems to me that the question that I have to answer when I evaluate the 3553(a) factors is . . . whether the sentence imposed is a sufficient deterrent. And I have to say after looking at this file that I think 80 months in custody is a sufficient deterrent and 92 months in custody would not make any difference under the 3553(a) factors.

127 S.Ct. 2456, 2469 (2007) (holding that there was no proce-
dural error when a district court simply stated that defendant's
reasons for a below-Guidelines sentence were "insufficient,"
and that a sentence at the bottom of the Guidelines range was
"appropriate"); *Carty*, 520 F.3d at 995 (upholding a sentence
in a case that was not complex, even though the district court
"gave no explicit reasons" for the sentence imposed).

**[13]** Bendtzen nevertheless argues that the sentence is sub-
stantively unreasonable given the nature of his criminal his-
tory. Although we do not presume a sentence is reasonable
because it is within or below the Guidelines range, "we recog-
nize that a correctly calculated Guidelines sentence will nor-
mally not be found unreasonable on appeal." *Carty*, 520 F.3d
at 988. "For a non-Guidelines sentence, we are to 'give due
deference to the district court's decision that the § 3553(a)
factors, on a whole, justify the extent of the variance.' " *Id.* at
993 (quoting *Gall v. United States*, 128 S.Ct. 586, 597
(2007)).

Because "a Guidelines sentence 'will usually be reason-
able,' " *id.* at 994 (quoting *Rita*, 127 S.Ct. at 2465), Bendt-
zen's below-Guidelines sentence, supported by the district
court's specific reasoning, is reasonable. *See United States v.
Perez-Perez*, 512 F.3d 514, 515-16 (9th Cir. 2008) (holding
that a within-Guidelines sentence based in part on the defen-
dant's extensive criminal history was reasonable despite the
defendant's argument that his prior drug conviction was *de
minimis*).

## CONCLUSION

**[14]** The Sentencing Guidelines provide a four-level adjust-
ment for "otherwise us[ing]" a dangerous weapon in connec-
tion with a robbery. U.S.S.G. § 2B3.1(b)(2)(D). For purposes
of this adjustment, the definition of "dangerous weapon"
includes objects that appear to be instruments capable of
inflicting death or serious bodily injury. U.S.S.G. § 1B1.1

cmt. n.1(D). Bendtzen's use of the fake bomb constituted "otherwise us[ing] a dangerous weapon." Further, the district court did not err by considering Bendtzen's past crimes and thereby arriving at a category VI criminal history. Accordingly, Bendtzen's eighty-month sentence is substantively reasonable.

**AFFIRMED.**