# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 20, 2009

Charles R. Fulbruge III
Clerk

No. 07-10922

UNITED STATES OF AMERICA,

  Plaintiff-Appellee,

v.

JONAS M. DUNIGAN,

  Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before SMITH and SOUTHWICK, Circuit Judges, Rodriguez,[*] District Judge.

JERRY E. SMITH, Circuit Judge:

Jonas Dunigan was found guilty of bank robbery. He appeals his conviction and sentence, and we affirm.

---

[*] Xavier Rodriguez, District Judge of the Western District of Texas, sitting by designation.

I.

Shortly after a bank, located in a Kroger grocery store, opened for business, Dunigan entered it, jumped over the top of the counter, pointed a weapon at bank employee Erica Dennis's face, and demanded that she give him the money. Witnesses said Dunigan wore a gray sweatshirt, a hat with a white bill, a white bandana with a floral design, and athletic shoes. Dunigan got the money, put it into a black nylon bag, and fled. A witness saw a white Dodge Avenger with a license plate containing the letters "H" and "Q" leaving the area.

FBI Agent Kleinlein investigated the robbery. He searched the area surrounding the store for a white Dodge Avenger, locating one with the license plate H01XHM. Thinking the witness had misidentified the "Q," he contacted the Texas Department of Transportation ("TxDOT") and found out that there was no white Dodge Avenger registered in Texas with a "Q" in the license plate.

He then obtained a search warrant for the vehicle and the apartment of its registered owner, Samantha Mattingly, who was Dunigan's girlfriend. When Kleinlein searched the apartment, he found a BB gun, a white hat, a gray sweatshirt, a white bandana, a brown Kroger shopping bag, Nike athletic shoes, and two nylon bags, all similar to the items witnesses saw at the robbery. Dunigan's physical appearance was also similar to the descriptions given by witnesses.

Kleinlein testified about his investigation, including his call to TxDOT and the material he learned from the witnesses. Dunigan objected to some of that testimony as being hearsay, but the court overruled the objections. During the closing statements, the prosecutor made several arguments, including that Dunigan was a gambler and was gambling during the robbery. Dunigan was convicted and sentenced to seventy-eight months in prison.[1]

---

[1] The guidelines range had been calculated to be 78 to 97 months. The presentence report recommended that the offense level be increased pursuant to U.S.S.G. § 2B3.1(b)(2)(D) because Dunigan "otherwise used" a "dangerous weapon."

## II.

Dunigan alleges a procedural error occurred when the district court increased his punishment four levels under U.S.S.G. § 2B3.1(b)(2)(D) because he "otherwise used" a "dangerous weapon" during the robbery. He objects to the enhancement on two grounds. First, he argues that his use of a BB gun during the robbery was "brandish[ing]" a weapon rather than "otherwise us[ing]" a weapon.[2] Second, he contends the BB gun was not a "dangerous weapon."

This court reviews sentencing decisions for abuse of discretion. United States v. Rowan, 530 F.3d 379, 381 (5th Cir. 2008). The process of review is bifurcated: First, we ensure that the district court did not commit a significant procedural error, and second, we consider the "substantive reasonableness" under an abuse of discretion standard. See Gall v. United States, 128 S. Ct. 586, 597-98 (2007). A procedural error occurs where a court fails to calculate the guidelines properly, treats them as mandatory, fails to consider 18 U.S.C. § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails adequately to explain the chosen sentence, including an explanation for any deviation from the guideline range. See id. at 597.

## A.

We first examine whether the court abused its discretion when finding that Dunigan "otherwise used" his gun rather than "brandished" it.

> "Brandished" with reference to a dangerous weapon (including a firearm) means that all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person. Accordingly, although the dangerous weapon does not have to be directly visible, the weapon must be present.

---

[2] The enhancement for "otherwise us[ing]" a weapon falls under U.S.S.G. § 2B3.1(b)-(2)(D), and the enhancement for brandish[ing] a weapon falls under U.S.S.G. § 2B3.1(b)(2)(E).

U.S.S.G. § 1B1.1, cmt. n.1(c). "'Otherwise used' with reference to a dangerous weapon (including a firearm) means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." Id. cmt. n.1(I).[3]

This court addressed the distinction between "brandished" and "otherwise used" in several cases, most notably United States v. Gonzales, 40 F.3d 735, 738-40 (5th Cir. 1994).[4] The current definitions in the guidelines, however, were changed in 2000.

The former version stated that "brandished" means the weapon was pointed or waved about or displayed in a threatening manner. U.S.S.G. § 1B1.1 cmt. n.1(c) (1998). "[U]nder the current Guidelines, the definition of 'brandished' can mean as little as displaying part of a firearm or making the presence of the firearm known 'in order to intimidate.'" United States v. Bolden, 479 F.3d 455, 463 (6th Cir.), cert. denied, 128 S. Ct. 175 (2007) (citing U.S.S.G. § 1B1.1 cmt. b.1(c) (2002)). Since these changes were made, we have examined the issue of "brandished" versus "otherwise used" only once, in United States v. Williams, 520 F.3d 414, 423 (5th Cir.), cert. denied, 129 S. Ct. 111 (2008), in which we adopted the interpretation of U.S.S.G. § 2B3.1(b)(2) contained in United States v. Paine, 407 F.3d 958, 963-64 (8th Cir. 2005), and United States v. Orr, 312 F.3d 141, 144-45 (3d Cir. 2002).

The use of weapons in Williams, Paine, and Orr is similar to Dunigan's use of his BB gun. In Williams, the defendant pointed and swung a "shank" at a pol-

---

[3] "Commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." United States v. Zuniga-Amezquita, 468 F.3d 886, 888 n.3 (5th Cir. 2006) (citation and brackets omitted).

[4] See, e.g., United States v. Nguyen, 190 F.3d 656, 660-61 (5th Cir. 1999); United States v. Fletcher, 121 F.3d 187, 198 (5th Cir. 1997), overruled on other grounds by United States v. Cotton, 535 U.S. 625 (2002).

ice officer. Williams, 520 F.3d at 423. The court noted that the defendant did "more than just display the shank or make its presence known in order to intimidate," which would have been brandishing. Id. Instead, the defendant had "otherwise used" the shank under U.S.S.G. § 2B3.1.[5] Id. In Paine, the defendant drew a weapon, pointed it at his target, put his finger on the trigger, and said, "I mean it." Paine, 407 F.3d at 964. The court held that the weapon had been "otherwise used" instead of "brandished," court noting that the 2000 amendment "was intended to include at least some instances involving pointing a weapon within the definition of 'otherwise used.'" Id. Finally, in Orr, the defendant pointed his gun at an assistant manager's head and ordered her to empty money into a bag. Orr, 312 F.3d at 145. The court found that this constituted a "specific threat" and thus fell under "otherwise used" rather than "brandished." Id.

Examining Williams, Paine, and Orr, we can determine when it is appropriate to utilize "otherwise used" instead of "brandished." The threat to the victim must be specific rather than general. See Williams, 520 F.3d at 423; Paine, 407 F.3d 964. Displaying a weapon without pointing or targeting should be classified as "brandished," but pointing the weapon at any individual or group of individuals in a specific manner should be "otherwise used."[6] To the extent that this new framework conflicts with our previous distinction between an "implicit"

---

[5] Dunigan argues that Williams did not overrule our pre-2000 cases involving the definitions at issue, claiming that Williams reserved the question whether the new amendment expands brandished's definition. He points to the court's position that the old definition for brandishing is "arguably more expansive" than the new term. Williams, 520 F.3d at 423.

Dunigan is incorrect. Williams explicitly endorsed the new reading of § 2B3.1 that other circuits had already endorsed, and its dictum regarding the defendant's sentencing level under the pre-2000 guidelines did not alter that endorsement.

[6] This differs from the pre-2000 distinction of "implicit" versus "explicit." See Nguyen, 190 F.3d at 661. This distinction is "no longer supported by the current Guidelines definition of 'brandished.'" Bolden, 479 F.3d at 462.

and "explicit" threat,[7] that framework no longer governs, in light of the amended guideline and the caselaw interpreting it.

When Dunigan robbed the bank, he jumped over the counter, pointed the BB gun in Dennis's face, and shouted "shut the f*** up, b****" and "give me all your money." By pointing the gun at Dennis's face, as opposed to merely displaying it for intimidation purposes, Dunigan "otherwise used" the gun rather than "brandished" it. The district court properly enhanced the sentence.

## B.

We examine whether the court committed plain error in finding that Dunigan qualified for § 2B3.1(b)(2)(D) enhancement by using a "dangerous weapon." Under Gall, 128 S. Ct. at 597-98, if a defendant challenges the reasonableness of his sentence, we review for abuse of discretion. If the defendant does not challenge the reasonableness in district court, however, we review for plain error.[8]

Although Dunigan challenged reasonableness in district court, he did not do so on this specific ground. "Where the defendant has failed to object on specific grounds to the reasonableness of his sentence, thereby denying the court the opportunity to identify and correct any errors, we review for plain error." United States v. Casper, 536 F.3d 409, 416 (5th Cir. 2008) (citation omitted), petition for cert. filed (Nov. 10, 2008) (No. 08-7228). "An error is considered plain, or obvious, for purposes of this court's plain error inquiry only if the error is clear under existing law." United States v. Maturin, 488 F.3d 657, 663 (5th Cir. 2007) (citation omitted).

---

[7] That distinction was established in Gonzales, 40 F.3d at 740.

[8] See United States v. Peltier, 505 F.3d 389, 391-92 (5th Cir. 2007), cert. denied, 128 S. Ct. 2959 (2008); see also United States v. Vargas-Rangel, No. 08-40099, 2008 WL 5232025, at *1 (5th Cir. Dec. 16, 2008) (unpublished) (using plain error review where defendant failed to challenge reasonableness in the district court and acknowledging the new standard in Gall).

Under Dunigan's reading of U.S.S.G. § 2B3.1, a BB gun would be considered a dangerous weapon under § 2B3.1(b)(2)(E) but not § 2B3.1(b)(2)(D). He claims that the commentarySSspecifically note 2SSshows a distinction between the application of "dangerous weapon" to each provision. See § 2B3.1 cmt. n.2 (discussing dangerous weapon definition for (b)(2)(E) but not for (b)(2)(D)). Dunigan argues that because comment note 2 defines "dangerous weapon" for only "brandished," the same definition cannot be used for "otherwise used."

Dunigan's reading is flawed, however, because he ignores the previous note in the commentary, which states that a variety of termsSSincluding dangerous weaponSSare "defined in the Commentary to § 1B1.1." U.S.S.G. § 2B3.1 cmt. n.1. This note makes no distinction between subsections (b)(2)(E) and (b)(2)(D), and we follow this definition to determine whether Dunigan's BB gun is a dangerous weapon.[9]

> The Commentary defines a dangerous weapon as
>
> (i) an instrument capable of inflicting death or serious bodily injury; or (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument (e.g. a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun).

U.S.S.G. § 1B1.1 cmt. n.1(D). Dunigan's BB gun qualifies as a dangerous weapon under either definition. When robbing the bank, he pointed the gun at Dennis's face, using the gun as though it were a more dangerous firearm to threaten the bank employees. This makes the gun a dangerous weapon. In addition, we recognize that a BB gun is capable of inflicting "serious bodily injury." The district court did not commit plain error in finding Dunigan's BB gun to be a "dan-

---

[9] Other circuits examining the definition of dangerous weapon have also used this definition. See United States v. Bendtzen, 542 F.3d 722, 725 (9th Cir. 2008); United States v. Miller, 206 F.3d 1051, 1053 (11th Cir. 2000).

gerous weapon" under U.S.S.G. § 2B3.1(b)(2)(D).

### III.

Dunigan contends that the district court erred when it admitted alleged hearsay evidence from Agent Kleinlein when he stated that there are no Dodge Avengers in Texas with the letter "Q" on the license plates. We review this evidentiary ruling for abuse of discretion, and it is subject to the harmless error rule. See United States v. Valentine, 401 F.3d 609, 616 (5th Cir. 2005).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). Federal Rule of Evidence 802 bars hearsay testimony "except as provided by these rules or by other rules prescribed by the Supreme Court . . . ." FED. R. EVID. 802.

The district court allowed Kleinlein's testimony under Rule 803(7)'s hearsay exception:

> Absence of entry in records kept in accordance with the provisions of paragraph (6). Evidence that a matter is not included in the memoranda reports, records, or data compilations, in any form, kept in accordance with the provisions of paragraph (6), to prove the nonoccurrence or nonexistence of the matter, if the matter was of a kind of which a memorandum, report, record, or data compilation was regularly made and preserved, unless the sources of information or other circumstances indicate lack of trustworthiness.

FED. R. EVID. 803(7). There was no need for the court to use this exception, however, because Kleinlein's testimony was primarily not hearsay.[10]

Hearsay must be used "to prove the truth of the matter asserted," and

---

[10] At one point, the prosecution's questioning of Kleinlein may have elicited an answer that was based on inadmissible hearsay. To the degree, if any, that Kleinlein gave any improper hearsay testimony, however, the decision to admit it was harmless error. See Abner v. Kansas City S. R.R., 513 F.3d 154, 168 (5th Cir. 2008) ("Even presuming that the district court's admission of hearsay statements was in error, this error was harmless.").

Kleinlein was testifying only to describe how he eventually located Dunigan, not to prove that there were no Dodge Avengers with a "Q" on the license plate. "Out-of-court statements offered for another purpose, e.g., providing background information to explain the actions of investigators, are not hearsay." United States v. Johnston, 127 F.3d 380, 394 (5th Cir. 1997) (citation omitted). Testimony describing an investigation's background should not be needlessly objected to on hearsay grounds where it goes only to how police investigated a crime rather than to the truth of the matter asserted.

Dunigan argues that even if the testimony was not hearsay, it should be excluded because "its probative value is substantially outweighed by the danger of unfair prejudice . . . ." FED. R. EVID. 403. Even non-hearsay background information must meet the requirements of Rule 403.[11] Kleinlein's testimony did not violate Rule 403. It was highly probative, because it described the investigation's time line and how the defendant was eventually located. The prejudice to the defendant is limited, because it did not implicate his specific car in the robbery but merely eliminated another class of cars. The district court did not abuse its discretion in allowing the testimony.[12]

## IV.

Dunigan objects to testimony concerning his weight. He did not object to the testimony at trial, so we review for plain error. United States v. Acosta, 475 F.3d 677, 680-81 (5th Cir. 2007) (citation omitted). "[T]he plain-error exception

---

[11] See Johnston, 127 F.3d at 394-95 (describing a case in which background testimony, although not hearsay, was highly prejudicial).

[12] Though the court overruled the objection on a different ground, "it is an elementary proposition, and the supporting cases too numerous to cite, that this court may affirm the district court's judgment on any grounds supported by the record." United States ex rel. Farmer v. City of Houston, 523 F.3d 333, 338 n.8 (5th Cir.) (citation, brackets, ellipses, and internal quotation marks omitted), cert. denied, 129 S. Ct. 570 (2008).

to the contemporaneous-objection rule is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." Id. at 681 (citation and internal quotation marks omitted).

Kleinlein testified that the bank robber was "described as, I believe, 5'10" from 140 to 180, I believe, but that description was consistent with the description of Mr. Dunigan on his driver's license." Dunigan contends that because this information was gotten from witnesses to the crime, it was impermissible hearsay. Again, however, Kleinlein was just using this description in reference to his investigation, to explain why he eventually pursued Dunigan, not describing Dunigan. This was "background information to explain the actions of investigators, []not hearsay," and the court did not commit plain error. See Johnston, 127 F.3d at 394.

V.

Dunigan avers that the district court committed plain error by allowing the prosecutor to discuss Dunigan's risk-taking and gambling. "Improper prosecutorial comments constitute reversible error only where the defendant's right to a fair trial is substantially affected." United States v. Holmes, 406 F.3d 337, 355-56 (5th Cir. 2005) (citation and internal quotations omitted). "A criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone. The determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict." Id. at 356 (citations omitted). "This already narrow standard of review is further constrained by [the defendant's] failure to object; he bears the burden of demonstrating that the prosecutor's statements constitute plain error." Id. (citing United States v. Bernard, 299 F.3d 467, 488 (5th Cir. 2002), and FED. R. CRIM. P. 52(b)).

The prosecutor said of Dunigan that "[h]e's a gambler, and gamblers take risks, sometimes calculated risks and sometimes big risks, but he's hoping that

by concealing his identity you're going to cut him loose." The prosecutor made later comments characterizing Dunigan's actions as a type of gamble. Dunigan has not proven that these comments constitute plain error. Looking at the entirety of the government's closing argument, the gambling theme was not dominant and does not cast doubt on the verdict.

Also, during the trial Dunigan had been portrayed as making a living by gambling, and the prosecutor's comments about Dunigan's gambling could have been referencing this argument. Numerous pieces of evidence were presented at trial that tied Dunigan to the crime, including the model of his car, testimony of the bank employees, and the articles of clothing and BB gun found at his apartment after the robbery. The failure to strike the prosecutor's gambling remarks was not plain error.

The judgment of conviction and sentence is AFFIRMED.