# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-40280

UNITED STATES OF AMERICA,

United States Court of Appeals
Fifth Circuit

**FILED**

March 9, 2015

Lyle W. Cayce
Clerk

Plaintiff - Appellee

v.

MIGUEL ANGEL SANCHEZ,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:11-CR-1381

Before BARKSDALE, SOUTHWICK, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:*

Miguel Angel Sanchez appeals his 87 month prison sentence following a guilty plea for interfering with commerce by threats or violence. The district court imposed a four-level Guidelines enhancement for otherwise using a dangerous weapon during a jewelry store robbery. Sanchez argues that the involvement of a Fubar during the robbery amounts to, at most, the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-40280

brandishing of a dangerous weapon.  Because the record does not support the enhancement, we VACATE and REMAND.

## I.

On May 16, 2011, Sanchez and three other individuals robbed a jewelry store in McAllen, Texas.  One individual acted as a lookout while Sanchez and two other individuals proceeded inside the store.  One of the individuals—but not Sanchez—ordered the four store employees to get on the ground; Sanchez did not speak.  The employees complied with the order.  Sanchez and the two other individuals proceeded to take jewelry from display cases.  Sanchez was holding a metal functional utility bar, commonly known as a Fubar, used for prying, splitting, board bending and striking jobs.  Sanchez used the Fubar to break the display cases and collect the jewelry.  A third individual used a pipe wrench to break display cases.  A fourth individual collected jewelry from the broken cases into a duffle bag.  Sanchez and the other individuals spent less than two minutes carrying out the robbery.

At Sanchez's rearraignment, the district court inquired about the use of a weapon.  The government stated that there "was the threat of physical violence when the entry was made—the employees were all told to get on the ground."  The government added that the individuals "had several large demolition bars that were—that they were carrying with them."  The attorney for Sanchez's co-defendant stated that he did not "believe anyone used the bars against any of these people."  The district court replied, "Well, except for the fact they were holding them . . . [w]hile they were being told get on the ground."

In the Presentence Investigation Report ("PSR"), the probation officer recommended that Sanchez's base offense level be increased by four levels under U.S.S.G. § 2B3.1(b)(2)(D) because a dangerous weapon—the Fubar—was "otherwise used" to break into display cases.  Sanchez objected to the enhancement.  The probation officer responded that the enhancement was

2

No. 14-40280

appropriate because a Fubar is considered a dangerous weapon and "was otherwise used during the course of the robbery."

At the sentencing hearing, Sanchez did not reiterate or make any additional argument concerning the objection. The district court found that the four-level increase was warranted, adopted the recommendation in the PSR, and sentenced Sanchez to 87 months in prison, at the top of the advisory Guidelines range of 70-87 months. Sanchez timely appealed.

## II.

Sanchez raises a single issue on appeal: whether he "otherwise used" the Fubar as a dangerous weapon pursuant to U.S.S.G. § 2B3.1(b)(2)(D). The parties dispute the applicable standard of review. The government contends that Sanchez's objection was vague and deserves only plain error review. *See United States v. Chavez-Hernandez*, 671 F.3d 494, 497 (5th Cir. 2012) ("If . . . the defendant has failed to make his objection to the guidelines calculation sufficiently clear, the issue is considered forfeited, and we review only for plain error."). Sanchez counters that his objection was specific enough to preserve review. We agree with Sanchez on this point.

Sanchez filed a written objection to the PSR, contending that he "objects to the four (4) level enhancement under U.S.S.G. Section 2B3.1(b)(2)." Sanchez did not expound the reasons for his objection. Still, the objection was "sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction." *United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009). "Exacting precision is not required." *United States v. Gonzales*, 642 F.3d 504, 505 (5th Cir. 2011). The record shows that the district court understood the basis for Sanchez's objection and had an opportunity to address it before imposing a sentence. Sanchez's challenge to U.S.S.G. § 2B3.1(b)(2) could have raised only two issues: the classification of the Fubar as a dangerous weapon or the PSR's conclusion that it was "otherwise used."

3

In an addendum to the PSR, the probation office demonstrated understanding of Sanchez's objection, responding that "the U.S. Probation Office maintains that the increase was appropriately assessed as a Fu-Bar, considered a dangerous weapon, was otherwise used during the course of the robbery." At the sentencing hearing, the district court similarly addressed both of the possible grounds for objection:

> Pursuant to guideline section 2(b)(3.1)(b)(2) there was a dangerous weapon that was otherwise used in this case, so this is an increase of 4 levels.

> The Defendant entered in to this joint undertaking criminal activity that involved breaking into display cases utilizing a Fubar. The Fubar is considered an instrument that is capable of inflicting death or serious bodily injury and certainly the way it was used here, it was used as a dangerous weapon. So thus, the 4-level increase is warranted here.

> It's not only the Court's description here, but the description in the entire Pre-Sentence Investigation Report as to how this bar was used for purposes of, in some ways actually, also intimidating the victims that were at the store.

Unlike the objection in *Chavez-Hernandez*, Sanchez's objection accomplished the purposes of requiring specific objections:  clarifying issues to the district court, allowing the district court to rule in the first instance, shielding this court from ruling on issues that have been insufficiently vetted below, and discouraging sandbagging. *See Chavez-Hernandez*, 671 F.3d at 497.  Moreover, despite the government's suggestion, there is no requirement that Sanchez reiterate his objection orally.  *See Neal*, 578 F.3d at 272–73 (citing *United States v. Medina-Anicacio*, 325 F.3d 638, 642 (5th Cir. 2003) ("[O]nce a party raises an objection in writing, if he subsequently fails to lodge an oral on-the-record objection, the error is nevertheless preserved for appeal." (alteration in original))).

No. 14-40280

Because Sanchez adequately objected to the sentencing enhancement in the district court, we "review the district court's application of the Guidelines *de novo* and its factual findings for clear error." *Id.* at 273 (internal quotation marks and citation omitted).

## III.

U.S.S.G. § 2B3.1(b)(2)(D) increases a defendant's offense level by four levels "if a dangerous weapon was otherwise used" in the course of a robbery. U.S.S.G. § 2B3.1(b)(2)(D). If a dangerous weapon was only "brandished or possessed," the offense level is increased by three levels. *Id.* § 2B3.1(b)(2)(E). The parties do not dispute that a Fubar qualifies as a "dangerous weapon" under the Guidelines because it is "an instrument capable of inflicting death or serious bodily injury." *Id.* § 1B1.1 cmt. n.1(D). Rather, the dispute is whether the Fubar was "otherwise used" or merely brandished, displayed, or possessed. The Guidelines definitions provide a useful starting point for our analysis.

> "Brandished" with reference to a dangerous weapon (including a firearm) means that all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person. Accordingly, although the dangerous weapon does not have to be directly visible, the weapon must be present.

*Id.* cmt. n.1(C). "'Otherwise used' with reference to a dangerous weapon (including a firearm) means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." *Id.* cmt. n.1(I).

5

No. 14-40280

This court has, on several occasions, discussed the difference between brandishing and otherwise using a dangerous weapon.[1]  In *United States v. Williams*, we held that a defendant who pointed and swung a shank at a corrections officer "otherwise used" a dangerous weapon.  520 F.3d 414, 423 (5th Cir. 2008); *see also United States v. Espinosa*, 422 F. App'x 333, 334 (5th Cir. 2011) (pistols were "otherwise used" when pointed at victims).  In *United States v. Dunigan*, the defendant pointed a BB gun in the victim's face and shouted at the victim to shut up and give him all her money.  555 F.3d 501, 506 (5th Cir. 2009).  This court, relying on the act of pointing the gun at the victim, held that the defendant "otherwise used" the gun.  *Id.*  We reasoned that "[d]isplaying a weapon without pointing or targeting should be classified as 'brandished,' but pointing the weapon at any individual or group of individuals in a specific manner should be 'otherwise used.'"  *Id.* at 505.  For the four-level enhancement to apply, "[t]he threat to the victim must be specific rather than general."  *Id.*

In sum, precedent dictates that a defendant makes a "specific" threat sufficient to constitute "otherwise us[ing]" a dangerous weapon when he points or swings the weapon at an individual, with or without an accompanying verbal threat.  Here, the district court did not make a finding, and the record does not support, that Sanchez or any other individual involved with the robbery pointed, swung, or directed the Fubar at the store employees.  Indeed,

---

[1] The Guidelines were amended in 2000 to expand the definition of "brandished." Prior to 2000, "'[b]randished' with reference to a dangerous weapon (including a firearm) mean[t] that the weapon was pointed or waved about, or displayed in a threatening manner." U.S.S.G. § 1B1.1 cmt. n.1(c) (1998).  The definition of "otherwise used" remained tied to the definition of brandished, meaning that the threshold for "otherwise used" effectively was lowered by the 2000 amendments.  For this reason, pre-2000 cases discussing brandishing are of little use.  *See United States v. Dunigan*, 555 F.3d 501, 505 n.5 (5th Cir. 2009) (noting that pre-2000 cases involving these definitions were "overrule[d]").

the government characterized defendants as "carrying" Fubars and the district court found that defendants were "holding" them.

Instead, the government's theory is that the order to get on the ground, followed closely by Sanchez's use of the Fubar to break open display cases in front of the employees, constituted "otherwise us[ing]" the Fubar because the "concerted action had the desired effect of intimidating the victims and was equally as coercive and threatening as an explicit verbal threat." The government therefore asks us to expand the orbit of otherwise using a dangerous weapon, which we have held must create a *specific* threat to a victim, to activity beyond that involving neither a verbal threat explicitly involving the weapon nor a direct physical threat caused by pointing or otherwise targeting the weapon at the victims. *See Dunigan*, 555 F.3d at 505.

The primary case cited by the government does not warrant extending the definition of "otherwise used" in this manner. In *United States v. Johnson*, Johnson used a sledgehammer to break open jewelry display cases during a robbery. 199 F.3d 123, 124 (3d Cir. 1999).[2] While Johnson smashed the display cases, a co-defendant held a baseball bat aloft and threatened to break an employee's neck and knock her head off. *Id.* at 127–28. The Third Circuit held that this conduct—Johnson's smashing of display cases *combined with* a co-defendant's wielding of a baseball bat and explicit verbal threats involving the bat—warranted the "otherwise used" enhancement against Johnson. *Id.*

The conduct in this case does not rise to the level of use in *Johnson*. For the "otherwise used" enhancement to apply, the threat to the victim must be specific, which can be accomplished either by physical action or a verbal

---

[2] As a Third Circuit case analyzing the pre-2000 "brandishing" definition, *Johnson*'s persuasiveness is doubtful, *see supra* n.1; regardless, it is distinguishable from the facts of this case.

threat.[3] Unlike in *Johnson*, no individual verbally threatened to use a weapon against any victim.  The link between the Fubar and the verbal threat to get on the ground was too attenuated and general to warrant the enhancement; Sanchez used the Fubar to smash the display cases and a different individual gave the verbal order.  The district court gave weight to a finding that the Fubar's use was for purposes of intimidation, and actually did intimidate the employees.  But a finding of intimidation, without more, is consistent with a finding of brandishment—intimidation is a required element of brandishing a weapon.  *See* U.S.S.G. § 1B1.1 cmt. n.1(C).  While the smashing of the display cases doubtless contributed to the employees' intimidation, the use of the Fubar was as a tool to break the display cases and access the jewelry.  Sanchez's use of the Fubar did not create the required "specific" threat to the victims.  *Dunigan*, 555 F.3d at 505.  Accordingly, we find that the district court improperly applied the four-level enhancement for otherwise using a dangerous weapon.

## IV.

Our conclusion that the enhancement was erroneous will not result in remand for resentencing if the error was harmless.  *See United States v. Ibarra-Luna*, 628 F.3d 712, 713–14 (5th Cir. 2010).  An error is harmless "only if the proponent of the sentence convincingly demonstrates both (1) that the district

---

[3] Our approach accords with that of other circuits that have considered the difference between "otherwise us[ing]" and "brandish[ing]."  *See United States v. Villar*, 586 F.3d 76, 89 (1st Cir. 2009) (a gun was otherwise used when "specifically level[ed]" at a victim); *United States v. Orr*, 312 F.3d 141, 144–45 (3d Cir. 2002) (pointing a gun at a victim's head and ordering her to provide money was a specific threat satisfying the otherwise used requirement); *United States v. Paine*, 407 F.3d 958, 964 (8th Cir. 2005) (pointing a firearm directly at a bank teller, along with a verbal threat, constituted otherwise using the weapon); *United States v. Albritton*, 622 F.3d 1104, 1107 (9th Cir. 2010) (pointing a pistol directly at a bank teller and ordering her to get down was otherwise using the weapon); *United States v. Douglas*, 489 F.3d 1117, 1128–29 (11th Cir. 2007) (per curiam) (showing a victim a gun and making explicit threat that he would hurt her if she did not comply with orders was otherwise using the weapon).

court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing." *Id.* at 714. The government "must point to evidence in the record that will convince us that the district court had a particular sentence in mind and would have imposed it, notwithstanding the error made in arriving at the defendant's guideline range." *United States v. Delgado-Martinez*, 564 F.3d 750, 753 (5th Cir. 2009) (internal quotation marks and citations omitted).

The government argues for plain error review and does not point to evidence in the record that shows that the district court would have imposed the same sentence had it considered the correct Guidelines range. The district court did not consider the alternative advisory Guidelines range and did not state that it would have imposed the same sentence. The district court considered the erroneous Guidelines range of 70-87 months and imposed a sentence of 87 months—at the high end of the range. The 87-month sentence would be outside of the correct Guidelines range and there is no evidence in the record that the district court would have imposed an out-of-Guidelines sentence. The district court's statement that it had considered all of the applicable 3553(a) factors is insufficient to meet the "heavy burden" of showing that the district court would have imposed the same sentence absent the error in calculating the Guidelines range. *Ibarra-Luna*, 628 F.3d at 717; *see also United States v. Huskey*, 137 F.3d 283, 290 (5th Cir. 1998). Accordingly, the error was not harmless.

## V.

For the foregoing reasons, we VACATE Sanchez's sentence and REMAND to the district court for resentencing with instructions to apply a three-level enhancement for "brandish[ing] or possess[ing]" a dangerous weapon. U.S.S.G. § 2B3.1(b)(2)(E).