IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 7, 2008

Charles R. Fulbruge III
Clerk

No. 07-30179

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MELVIN WILLIAMS,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Louisiana

Before KING, STEWART, and PRADO, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Defendant-Appellant Melvin Williams appeals his conviction for forcibly assaulting a federal officer in violation of 18 U.S.C. § 111. He was convicted after a jury trial and was sentenced to 150 months imprisonment, to run consecutively to any other sentence he was currently serving. On appeal, Williams argues that the evidence was insufficient to sustain his conviction and that the district court erred in enhancing his sentence pursuant to provisions of the United States Sentencing Guidelines ("Guidelines"). Finding no error, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 24, 2006, a federal grand jury returned a one-count indictment charging Williams with assaulting a government employee, in violation of 18 U.S.C. § 111. Specifically, the indictment charged that on March 8, 2006, Williams forcibly assaulted, by use of a dangerous weapon, Travis Bordelon, a corrections officer at the United States Penitentiary in Pollack, Louisiana ("USP Pollock") while Officer Bordelon was engaged in his official duties.

Williams proceeded to trial during which the following facts were established. Officer Bordelon, a corrections officer at USP Pollock, was stationed in front of the cafeteria on the morning of March 8, 2006, monitoring inmates as they walked through the cafeteria's metal detector. Williams walked around the metal detector instead of through it, explaining that he did not have to go through the metal detector because he had "metal inside him." Officer Bordelon then informed him that he would have to conduct a pat-down search. While Officer Bordelon was conducting the search, Williams jumped away and accused Officer Bordelon of grabbing his buttocks.

At trial, Officer Bordelon described how he conducted the search and explained that when he touched the buttocks of an inmate, he would use the back of his hands. Officer Bordelon denied touching Williams in an inappropriate manner. Officer Bordelon also testified that he did not recall if he had previously patted down Williams and that he did not recall any previous complaints from Williams about the manner in which he conducted his pat-down searches. Since Williams refused to permit Officer Bordelon to finish the pat-down search, Williams was escorted to the lieutenant's office. The incident was captured by a surveillance camera.

Later that morning, Officer Bordelon was on duty in the east corridor of the facility. While Officer Bordelon was monitoring inmates returning to their housing units, he noticed Williams walk by him in the hallway. Officer Bordelon

then heard someone yell his name, and as Officer Bordelon started to look around, Williams came up from behind him and hit him on the temple and on the top of his head. Officer Bordelon was struck several times, and as he fell on the ground, Williams continued to hit him. At one point, Williams stopped hitting him, and Officer Bordelon saw that Williams was "taking something out" and was putting it in his hand. When Officer Bordelon realized that Williams had a shank (homemade knife) in his hand, Officer Bordelon struggled to get up and get away from him. During trial, in response to the question, "And did [Williams] make a move towards you with the shank in his hand?," Officer Bordelon responded, "Yes, sir."

Officer Bordelon further testified, "He had the shank inside of his hand. He started to come at me and then he stopped." Officer Bordelon also testified that as Williams approached him with a shank in his hand, the shank was pointed towards him and that he feared for his life because he believed Williams was going to stab him. Officer Bordelon testified he had bruises on his head and suffered vision loss and headaches as a result of the blows. This incident was also captured by a surveillance camera.

Steve Edwards, a maintenance worker supervisor for the Bureau of Prisons, witnessed the incident. When Edwards saw Williams hitting Officer Bordelon, he ran towards them and screamed at Williams to stop. When Williams saw Edwards approaching, Williams stood up from beating Officer Bordelon, backed up, and produced the homemade weapon. In response to the question whether Williams pointed the shank at anyone, Edwards testified:

> When I was hollering at him, Bordelon was still kind of kicking, and he reached down and kind of made a swiping motion at Bordelon at that time. And I was backing up and hollering at Bordelon, you know, that he had a knife and Bordelon was trying to get away from him the best he could of on his back, crab walking.

When identifying the shank, Edwards testified, "This is the weapon that Melvin Williams had pulled out of his waistband and aimed in my direction and also swiped at Officer Bordelon with." While demonstrating "the swiping motion" he had observed, Edwards testified as follows:

> Mr. Williams, when I ran up to him, he had this in his waistband and he pulled it out and he kind of did this toward me. I was hollering at Bordelon; he was on the ground. And he turned his attention to Bordelon then because Bordelon was kicking, and he made like a swiping motion toward Officer Bordelon.

Edwards also stated that Williams had the weapon in his right hand and was using it as an "offensive weapon" towards him and Officer Bordelon. During cross-examination, Edwards was shown the videotape of the incident and was asked if he saw Williams swinging the shank at Officer Bordelon in the video. Edwards replied as follows:

> I can't see it in the video myself either, but in my eyes, I saw it. I mean, I can't deny that. And I am not going to say that – the video is not in real time either. I think there's gaps and starts in the video. There's second gaps every frame of that video because these cameras are not operating real time, you know. It's stop, start, stop, start. That's my understanding. I mean, but I can only say what I believe that I saw.

On redirect, Edwards reiterated that Williams pulled out the weapon, pointed it at him, and then swung the weapon at Officer Bordelon.

Kendall Francois, a counselor at USP Pollock, testified that at the time of the incident, he received a call and went towards the east corridor where he found Williams running away from the corridor. Francois turned around and ran after Williams to the prison yard where Williams was surrounded by approximately 30 other staff members. Francois was eventually able to talk Williams into relinquishing the shank.

Williams testified on his own behalf and claimed that he attacked Officer Bordelon because of the inappropriate manner in which Officer Bordelon had

4

conducted the pat-down search. He admitted that he intended to confront Officer Bordelon "to stop him, get my point across and stop him from touching me." Williams testified that there had been previous occasions when Officer Bordelon touched him inappropriately, and although he had complained to several prison officials, nothing was done about his complaints. Williams explained that he feared that he would ultimately be forced to submit to homosexual activity with Officer Bordelon or someone else in the prison. Several inmates also testified that they had witnessed other instances where Officer Bordelon had touched Williams inappropriately. Williams denied "using" the shank as part of the assault, contending instead to have had it in order to draw attention to the situation and so that his complaints against Officer Bordelon would finally be addressed. Williams nevertheless admitted that he had the shank in his hand when he took a step towards Officer Bordelon.

At the completion of the Government's case, Williams moved for a judgment of acquittal based on the insufficiency of the evidence pursuant to Federal Rule of Criminal Procedure 29. In his motion, Williams argued that the evidence was insufficient to sustain the verdict. The district court denied his motion. At the completion of the defendant's case, Williams re-urged his Rule 29 motion, which was again denied. The jury returned a verdict of guilty, finding that Williams had forcibly assaulted a federal officer by means and use of a dangerous weapon.

The probation officer determined Williams's total offense level to be 29. Using a base offense level of 14 for an aggravated assault, the probation officer added: (1) four levels because Williams used a dangerous weapon pursuant to U.S.S.G. § 2A2.2(b)(2)(B); (2) three levels because Officer Bordelon sustained injuries pursuant to § 2A2.2(b)(3)(A); (3) two levels because Williams was convicted under § 111(b) pursuant to § 2A2.2(b)(6); and (4) six levels because Officer Bordelon was a Government employee and the offense of conviction was

motivated by Officer Bordelon's status as a Government employee pursuant to § 3A1.2(b). Williams's criminal history category was IV, resulting in an advisory guidelines sentencing range of 121 to 151 months of imprisonment.

The district court subsequently sentenced Williams to a term of 150 months of imprisonment, to run consecutively with any term Williams was currently serving. Williams timely filed a notice of appeal.

## II. DISCUSSION

A. Sufficiency of the Evidence

Williams contends that the evidence introduced at trial was insufficient to sustain the jury's verdict finding him guilty of assault by use of a dangerous weapon. While he admits that he assaulted Officer Bordelon with his fists and that he possessed a shank during the altercation, he argues that he never "swung or swiped the homemade knife during the assault or otherwise attempted to strike the guard with it and thus, he did not 'use' a dangerous weapon during the commission of the assault as required by 18 U.S.C. § 111(b)." The Government asserts that the evidence was more than sufficient to support the conviction since it established that Williams swung the shank at Officer Bordelon.

### 1. Standard of Review

Because Williams moved for a judgment of acquittal at the close of the Government's case-in-chief and at the close of all evidence, he properly preserved his sufficiency claim for appellate review. See United States v. Moreno, 185 F.3d 465, 470-71 (5th Cir. 1999). While we review a district court's denial of a motion for judgment of acquittal de novo, United States v. Delgado, 256 F.3d 264, 273 (5th Cir. 2001), our review is "narrow." Moreno, 185 F.3d at 471. "In deciding the sufficiency of the evidence, we determine whether, viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offenses

beyond a reasonable doubt." United States v. Pruneda-Gonzalez, 953 F.2d 190, 193 (5th Cir. 1992) (internal citations omitted). We accept the jury's credibility determinations unless a witness's testimony is incredible or patently unbelievable. United States v. Lopez, 74 F.3d 575, 578 (5th Cir. 1996). While "[t]he evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt" in order to be sufficient, "[i]f the evidence tends to give equal or nearly equal circumstantial support to guilt or innocence [] reversal is required." Moreno, 185 F.3d at 471 (internal citation and quotation marks omitted).

2. <u>Analysis</u>

18 U.S.C. §111 provides, in relevant part, as follows:

§ 111. Assaulting, resisting, or impeding certain officers or employees

(a) In general. Whoever –
(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 114 of this title while engaged in or on account of the performance of official duties; . . . shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.

(b) Enhanced penalty. Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

"While the language of the statue seems to suggest that there are three different punishments for one crime, this circuit has interpreted 18 U.S.C. § 111 to create three separate offenses: '(1) simple assault; (2) more serious assaults but not

involving a dangerous weapon; and (3) assault with a dangerous weapon.'" United States v. Ramirez, 233 F.3d 318, 321 (5th Cir. 2000), overruled on other grounds by, United States v. Longoria, 298 F.3d 367, 372 & n.6 (5th Cir. 2002) (citing United v. Nunez, 180 F.3d 227, 233 (5th Cir. 1999)). Because the Government's indictment charged Williams with assaulting Officer Bordelon with a dangerous weapon, we must determine whether the evidence supports a finding that Williams "used" the shank in a manner as contemplated by the statute.[1]

Our court has yet to decide when a dangerous weapon is "used" within the meaning of § 111(b), and the word is not defined by the statute. Thus, we must apply the "ordinary or natural" meaning of the word "use," variously defined as "[t]o convert to one's service," "to employ," "to avail oneself of," and "to carry out a purpose or action by means of." See Smith v. United States, 508 U.S. 223, 228-29 (1993) (internal quotation marks omitted) (citing Webster's New International Dictionary of English Language 2806 (2d ed. 1939) and Black's Law Dictionary 1541 (6th ed. 1990) to define the term "use" under 18 U.S.C. § 924). Such a meaning of the word is also consistent with this court's pattern jury instructions for § 111, which define the word "use" as follows:

> The term "deadly or dangerous weapon" includes any object capable of inflicting death or serious bodily injury. For such a weapon to have been "used," it must be proved that the defendant not only possessed the weapon but that the defendant intentionally displayed it in some manner while carrying out the forcible assault.

---

[1] Neither party disputes that Williams inflicted bodily injury upon Officer Bordelon when he assaulted him, and therefore because of those injuries, Williams was subject to the enhanced penalty provision of § 111(b). See Ramirez, 233 F.3d at 321. However, because the indictment specifically charged that Williams committed the assault with a dangerous weapon, the Government was required to prove that Williams used a dangerous weapon within the meaning of § 111(b) regardless of whether Officer Bordelon suffered bodily injury. See Nunez, 180 F.3d at 233.

5TH CIR. PATTERN JURY INSTRUCTIONS: CRIMINAL § 2.09 (2001). The record reflects that the jury was properly instructed in accordance with the pattern jury instruction with regard to the meaning of the word "use" under § 111(b).

In light of these definitions of the word "use," the testimony was sufficient to support the jury's conclusion that Williams used a dangerous weapon when he assaulted Officer Bordelon. Williams admitted that he had the weapon in his hand when he approached Officer Bordelon during the attack. Officer Bordelon testified that Williams approached with the shank in hand, he believed Williams was going to stab him, and that he feared for his life. Finally, Edwards testified that Williams pointed the shank at him and swiped it at Officer Bordelon. These facts, as well as the applicable jury instruction, lead us to conclude that a reasonable jury could find that Williams used his shank within the meaning of § 111(b) when he assaulted Officer Bordelon.

We are not persuaded by Williams's argument that the evidence was insufficient because the videotape which captured the incident does not explicitly show him swiping the shank at Officer Bordelon. While we agree with Williams's assessment of the videotape, given that the recording is not in real time, the videotape does not establish that Williams did not swipe at Officer Bordelon. Here, the jury heard from Officer Bordelon, Edwards, and Williams and could have decided that Williams did in fact swipe the shank at the officer. Such a credibility determination would not have been unreasonable, and therefore we cannot disturb it. See Lopez, 74 F.3d at 578 ("[O]n a review for sufficiency of the evidence we may not invade the jury's province by substituting our own credibility assessments for those of the jury."). Further, even assuming arguendo, that the evidence conclusively established that Williams did not swing the shank at Officer Bordelon, his argument would still fail. Even if, as Williams asserts, his conduct amounted only to brandishing the shank, our court has previously held that brandishing a knife can constitute use of a dangerous

weapon in the context of § 111(b).  See United States v. Rouse, 452 F.2d 311 (5th Cir. 1971) (upholding a defendant's conviction for using a dangerous weapon under § 111 when the defendant, during a scuffle with F.B.I. agents, brandished a knife).

Accordingly, we hold that the evidence was sufficient to support Williams's conviction.

## B.  Sentence Enhancements

Next, Williams makes two arguments for why the district court erroneously enhanced his sentence.  First, he contends that the court erred when it applied a four-level enhancement under U.S.S.G. § 2A2.2(b)(2)(A) on the basis that a dangerous weapon was "otherwise used" during the assault.  Second, he asserts that he should not have been given a six-level enhancement under U.S.S.G. § 3A1.2(b) on the basis that he was motivated in committing the assault by the officer's status as a government employee.  We will examine each argument in turn.

### 1. <u>Standard of Review</u>

Following United States v. Booker, 543 U.S. 220 (2005), sentences are reviewed for reasonableness in light of the sentencing factors in 18 U.S.C. § 3553(a).  See United States v. Mares, 402 F.3d 511, 519-20 (5th Cir. 2005). Although Booker rendered the Guidelines advisory, district courts are still required to properly calculate the advisory guidelines range prior to imposing a sentence.  See § 3553(a)(4); Mares, 402 F.3d at 519.  In calculating the guidelines range, the district court determines all facts relevant to sentencing in the same manner as before Booker.  Mares, 402 F.3d at 519.  If the sentencing judge imposes a sentence within a properly-calculated guideline range, the sentence is entitled to a nonbinding presumption of reasonableness. Rita v. United States, 127 S. Ct. 2456, 2462 (2007); United States v. Alonzo, 435 F.3d 551, 553-54 (5th Cir. 2006).

This court reviews the district court's findings of fact at sentencing for clear error, and its application of the sentencing guidelines de novo. United States v. Anderson, 174 F.3d 515, 524 (5th Cir. 1999). "A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole." United States v. Calbat, 266 F.3d 358, 364 (5th Cir. 2001). The district court may consider any relevant evidence, provided that the information has sufficient indicia of reliability to support its probable accuracy. United States v. Davis, 76 F.3d 82, 84 (5th Cir. 1996).

   2. Section 2A2.2(b)(2)(A)

Section 2A2.2 of the Guidelines applies to violations of § 111 where the conduct constituted an aggravated assault.[2] § 2A2.2, introductory cmt. The section provides that the base offense level should be increased by four levels if a dangerous weapon was "otherwise used" and by three levels if a dangerous weapon was brandished or its use was threatened. § 2A2.2(b)(2)(B), (C). "Otherwise used" and "brandished" are defined in the commentary to U.S.S.G. § 1B1.1. According to that provision: "'Otherwise used' with reference to a dangerous weapon . . . means that the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm or other dangerous weapon." § 1B1.1, cmt. n.1(I). "Brandished . . . means that all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person." § 1B1.1, cmt. n.1(C). Prior to the November 1, 2000 amendments to the Guidelines, brandished was defined to mean that "the weapon was pointed or waved about, or displayed in a threatening manner." § 1B1.1, cmt. n.1(C) (1999).

---

[2] "'Aggravated assault' means a felonious assault that involved (A) a dangerous weapon with intent to cause bodily injury (i.e., not merely to frighten) with that weapon; (B) serious bodily injury; or (C) an intent to commit another felony." § 2A2.2, cmt. n.1.

Williams argues that, at most, his conduct amounted to brandishing a dangerous weapon. In making this argument he maintains that he never swung the shank at Officer Bordelon. During sentencing his lawyer explained: "I'm simply making a factual objection that Mr. Williams never swung the weapon . . . and the person who testified to that I believe was impeached on that issue." The district court disagreed, responding: "Well, I will tell you that I reviewed the evidence again in light of your objection, and I don't agree with you." As discussed above, that factual finding was not clearly erroneous, and so we are bound by it. Thus, we now decide whether Williams "otherwise used" the shank when he pulled it out and swung it at Officer Bordelon.

We have not previously had an opportunity to address the distinction between brandishing and "otherwise used" since the November 1, 2000 amendments. However, several of our sister circuits have interpreted the post-amendment guidelines in a manner that supports the district court's conclusion that Williams, rather than brandishing, "otherwise used" the shank during the assault. See, e.g., United States v. Paine, 407 F.3d 958, 964 (8th Cir. 2005) (explaining that the amendment allows "some instances involving pointing a weapon [to be included] within the definition of 'otherwise used.'"); United States v. Orr, 312 F.3d 141, 144-45 (3d Cir. 2002) (after highlighting the differences between brandishing and "otherwise using," concluding that "pointing a gun at the head of the assistant manager and ordering her to empty money into a garbage bag was a 'specific threat' directed at her and was precisely the type of conduct which satisfies the 'otherwise used' requirement."). We agree with such an interpretation. Here, Williams did more than just display the shank or make its presence known in order to intimidate; the evidence established that he both pointed and swung the shank towards Officer Bordelon. Further, even under our pre-amendment caselaw, where the definition of brandishing was arguably more expansive, Williams's conduct would still not have been considered

brandishing. See, e.g., United States v. Burton, 126 F.3d 666, 678 n.22 (5th Cir. 1997) (noting that threats along with the display of firearms constituted "otherwise using" rather than brandishing for purposes of U.S.S.G. § 2B3.1). Therefore, we hold that the four level enhancement under U.S.S.G. § 2A2.2(b)(2)(A) was proper.

3. Section 3A1.2(b)

Section 3A1.2(a) provides that a defendant's base offense level should be increased by three levels if the victim was a government officer or employee and the offense of conviction was motivated by the officer's status as a government employee. § 3A1.2(a). However, § 3A1.2(b) further provides that the defendant's base offense level should be increased by six levels rather than three levels if, as in this case, the "applicable Chapter Two guideline is from Chapter Two, Part A (Offenses Against the Person)."[3] § 3A1.2(b). The commentary to § 3A1.2 provides that "motivated by such status" means "that the offense of conviction was motivated by the fact that the victim was a government officer or employee." § 3A1.2 cmt. n.3. The commentary further provides for a "personal dispute" exception, noting that the adjustment would not apply "where both the defendant and victim were employed by the same government agency and the offense was motivated by a personal dispute." Id.

Williams argues that the district court erred in enhancing his base offense level under § 3A1.2(b) because there was no evidence that his assault on Officer Bordelon was motivated by the officer's status as a government employee. Williams asserts that he would have assaulted anyone who touched him inappropriately. The district court rejected Williams's argument, explaining that the enhancement applied because the incident emanated from Williams's allegation that Officer Bordelon, in the course of his official duties,

---

[3] The guideline for a violation of § 111, Aggravated Assault, is found at U.S.S.G. § 2A2.2. Thus, the six-level increase applies. See § 3A1.2(b).

13

inappropriately touched him. The court concluded that "[the incident] stemmed from the official exercise of official duties by Mr. Bordelon."

Our Court has had limited occasion to interpret the "motivated by such status" language of § 3A1.2(a) and (b). See, e.g., United States v. Polk, 118 F.3d 286, 297-98 (5th Cir. 1997) (upholding a § 3A1.2(a) sentence enhancement of defendant who was convicted of plotting to blow up an Internal Revenue Service (IRS) building because, although no one was killed and the defendant did not know the names of his intended victims, the defendant did intend to "kill, injure, or maim federal employees in the [building] solely because those person worked for the IRS."); United States v. Harris, 104 F.3d 1465, 1476 (5th Cir. 1997) (reversing a defendant's enhancement under § 3A1.2(a) because while two of the defendant's co-conspirators had shot a police officer while fleeing, the defendant's offense of conviction, accessory after the fact, "was not motivated by the government employee status" of the officer.); United States v. Hooker, 997 F.2d 67, 75-76 (5th Cir. 1993) (holding that the defendants' sentences were properly enhanced under § 3A1.2(b) because they assaulted an officer employed by the Mississippi Bureau of Narcotics and during the assault, made statements including "they are the police. Let's kill them.").

We have previously never considered an argument similar to that advanced by Williams: namely, that the assault was motivated not by Officer Bordelon's official status, but by his inappropriate touching, which was more akin to a personal dispute. However, the Sixth Circuit has rejected a similar argument. See United States v. Talley, 164 F.3d 989, 1004 (6th Cir. 1999). In Talley, the court held that the "motivated by official status" enhancement of § 3A1.2(a) applied to a defendant who was convicted of soliciting to kill an FBI agent. In Talley, the defendant argued that his motivation in soliciting the murder of the agent was solely to eliminate the agent as a potential witness against him in a pending prosecution. Id. at 1003. Because the defendant in

14

Talley knew the victim was an FBI agent when he solicited the murder, and given that the sole reason the agent was a potential witness against the defendant was due to his employment as an FBI agent, the Sixth Circuit held that the solicitation was motivated by the victim's status, and therefore held that the defendant's sentence was appropriately enhanced under § 3A1.2. Id. at 1004. We find such reasoning persuasive and applicable in this case. Here, the sole reason Williams's allegation of improper touching by Officer Bordelon arose was because Officer Bordelon was employed as a corrections officer at USP Pollock. Accordingly, we agree with the district court that Williams's assault was motivated by Officer Bordelon's status.

## III. CONCLUSION

For the foregoing reasons, Williams's conviction and his 150 month term of imprisonment are AFFIRMED.