# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 9, 2011

No. 09-20361

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

MARTIN OVALLE-MARTINEZ; ELISA IDALIA CASTILLO

Defendants-Appellants

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:08-CR-146-6

Before DEMOSS, BENAVIDES, and ELROD, Circuit Judges.

PER CURIAM:[*]

Defendants-Appellants appeal their convictions and sentences on the grounds that there was insufficient evidence to support their convictions, and the sentencing was plainly erroneous. We find an overabundance of evidence to allow a rational jury to convict Defendants-Appellants, and find that the district court operated within its proper discretion in imposing within-Guidelines sentences on Defendants-Appellants. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. CASTILLO, OVALLE, LIZMA TOURS, CASH, AND COCAINE

After a jury trial, Elisa Idalia Castillo ("Castillo") and Martin Ovalle-Martinez ("Ovalle") were convicted of conspiracy to possess with intent to distribute five kilograms or more of cocaine, from January 1, 2006, through May 30, 2008, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii) and 846 (count one); conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (count two); and Ovalle was also convicted of aiding and abetting others in the possession with intent to distribute five kilograms or more of cocaine on or about May 23, 2006, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii) (count five).

The evidence presented to support the convictions was as follows. Castillo operated the Houston division of Lizma Tours ("Lizma"), a transportation company which ran tourist buses between Houston and Monterrey, Mexico. Drug Enforcement Administration (DEA) agents conducted surveillance of the Lizma bus terminal at 511 Wayside ("Wayside") nearly one hundred times from late April 2006 through 2008, and concluded that Lizma was the vehicle for an extensive drug smuggling operation, involving organization of over nine individuals to deliver cocaine and cocaine proceeds in hidden compartments located next to the gas tanks of the tourist buses. On more than five occasions agents observed behavior that DEA Special Agent Craig Cornelius testified was indicative of drug trafficking. On these occasions agents observed a Lizma bus arrive at Wayside around 5:00 a.m. and move to a different warehouse that four to seven cars per day visited. On one occasion agents observed such cars picking up packages at the warehouse and Lizma employees Alberto Abel Martinez and David Pacheco taking packages containing money out of some of the vehicles, and placing them inside the warehouse. The buses returned to Wayside in the evening and departed for Monterrey around 6:30 p.m.

In addition to this evidence of drug trafficking at Lizma's warehouses, the government presented evidence of its seizure of more than two million dollars and nearly seven hundred and fifty kilograms of cocaine from Lizma vehicles in 2006. First, on May 10, 2006, government officials seized from a compartment next to a gas tank of a south-bound Lizma bus $2,191,406.25 in U.S. currency (the cash had been separated into bundles, each bearing a name and a number). From north-bound Lizma vehicles, the following was seized: 240 kilograms of cocaine in book-shaped packages of one kilogram each on May 23; 207 kilograms of cocaine on June 11; 135 kilograms of cocaine in four boxes in Pacheco's car on July 2; 170 kilograms of cocaine on July 14; and 295 kilograms of cocaine on August 4. Additionally, in March 2008 agents recovered $640,000 from a Lizma bus.

As director of Lizma in Houston, Castillo was deeply involved in the operation of the business. She obtained insurance and vehicle registrations for all of the buses, rented various properties, opened a bank account for Lizma, and deposited cash from the business into that account. On a daily basis she opened and locked the Wayside warehouse gate.

Evidence indicated that Castillo had knowledge of the illegal drug smuggling aspect of the business she ran. At trial Castillo admitted that she was aware of the seizure of more than two million dollars from a Lizma bus about one month after it happened; knew that a Lizma bus was found to contain cocaine on May 23, 2006; and knew Martinez had been stopped with 207 kilograms of cocaine on June 11, 2006. Additionally, her expenses in operating Lizma far outweighed the revenue from the $35 ticket fee the average of ten passengers per trip paid.[1] The government presented evidence that there were

---

[1] These expenses included leases on two warehouses (one at $3,125 per month, and one at $1,350 per month), an apartment (at $450 per month), five buses (at $14,000 per month each); and purchase agreements on three buses (for $125,000 combined).

no withdrawals from Lizma's bank account for legitimate expenses of Lizma, and deposits into the account were made erratically in multiples of one hundred or one thousand dollars.

Additionally, Castillo's behavior in several instances indicated that she had knowledge of the drug smuggling aspect of the Lizma operation. On May 23, 2006, Castillo called driver Carlos Mancillas ("Mancillas") over twenty times during the course of Mancillas's 2:00 a.m. interview with an Immigration and Customs Enforcement agent. Each time she asked if he had safely cleared the border. During a July 15, 2006 stop, Castillo, in response to the bus driver's statement that drugs were found on the bus and he had taken blame, guaranteed that "we" will arrange a means of transportation back to Mexico. Martinez testified at trial that Castillo was present when he loaded two cardboard boxes full of cocaine, which had been sitting on the ground near Castillo, into a truck. He also recalled that Castillo had inquired whether the sheriff's office could legally take money seized from the bus. Additionally, after drug traffickers stopped using the Brenda warehouse, Castillo informed her landlord that she no longer wanted to rent it.

The government also presented evidence of Ovalle's role in the Lizma operation. Ovalle served as a driver of a bus from which agents seized 240 kilograms of cocaine on May 23, 2006. According to Agent Cornelius's testimony, on that occasion, Ovalle admitted to having knowledge of various aspects of the Lizma drug smuggling operation, including "that he knew drugs were being [sic] in these buses and off-loaded at the Brenda warehouse," that he knew of the prior seizure of about $2.2 million from a Lizma bus, and that Lizma buses stopped outside the U.S. Consulate's office in Monterrey to recruit passengers "to make [Lizma] look more legit." He also carried $4,500 in U.S. currency. Additionally, after an agent overheard a drug trafficker reporting that officers had followed him from the Three Sisters warehouse, Ovalle, after removing one

4

bus from that warehouse, returned while the second bus was still being unloaded of cocaine and loaded with money.

After the government rested its case, Castillo and Ovalle both moved unsuccessfully for judgments of acquittal under Federal Rule of Criminal Procedure 29(a), and both unsuccessfully renewed these motions after they rested. The jury found Castillo guilty on counts one and two, and Ovalle guilty on counts one, two, and five.

The district court adopted the probation officer's pre-sentence report ("PSR") for Castillo and sentenced her to concurrent terms of life imprisonment on count one and 240 months of imprisonment on count two. Castillo did not object. The district court sustained Ovalle's objection to the probation officer's recommended four-level increase in his offense level for being a leader of a criminal activity; and sentenced Ovalle to concurrent terms of 300 months of imprisonment on counts one and five, and 240 months of imprisonment on count two. Ovalle did not object to his sentence as imposed.

## II. ANALYSIS

Viewing the evidence in the light most favorable to the verdict and drawing all reasonable inferences from the evidence to support the verdict, a reasonable trier of fact could have concluded that the elements of the offenses of which Castillo and Ovalle were convicted were established beyond a reasonable doubt.[2] The above brief recounting of the evidence in support of the convictions is sufficient to show that the jury could easily have concluded that Castillo and Ovalle had knowledge of the conspiracy to possess with intent to distribute cocaine, and voluntarily participated in it. A rational jury might well

---

[2] By moving for a judgment of acquittal at the close of the government's case-in-chief, and at the close of all of the evidence, Defendants-Appellants preserved their respective challenges to the sufficiency of the evidence. *See United States v. Williams*, 520 F.3d 414, 419-20 (5th Cir. 2008).

conclude that to believe Castillo's testimony, it would have to ignore the bulk of evidence presented, and rely solely on the declaration of innocence of a defendant who had claimed lack of knowledge of various issues and then admitted knowledge of them on multiple occasions. Ovalle insists that there was no evidence that Ovalle knew the buses he drove contained drugs, but we believe Ovalle's extensive knowledge of the details of the drug smuggling operation together with the large quantity of cocaine on the bus on which he served as driver, was sufficient to allow a rational jury to convict Ovalle on count one. We thus affirm the convictions of both Ovalle and Castillo on count one.

We also find that the evidence was sufficient to allow a rational jury to convict Castillo and Ovalle on the count two charge of conspiracy to commit money laundering involving the proceeds of a specified unlawful activity, the sale and distribution of cocaine, with the intent to promote the carrying on of the specified unlawful activity, and with transporting and attempting to transport funds from the United States to Mexico with the intent to promote the carrying on of the specified unlawful activity, in violation of 18 U.S.C. § 1956(h) (conspiracy to commit a violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and (a)(2)(A)). Castillo and Ovalle do not dispute that a reasonable jury could find the first element of the charge, existence of a conspiracy, and in any case, the government presented ample evidence, elaborated above, that there was an agreement among two or more persons to launder money. Next, despite Defendants-Appellants' contention to the contrary, the government presented ample evidence of the other element of the conspiracy to commit money laundering charge–that Castillo and Ovalle voluntarily agreed to join this conspiracy. Castillo's supervision of every aspect of the Lizma operation in Houston, and her renting the warehouses and apartment facilitated the sale and distribution of cocaine and indicated her agreement to join the money laundering conspiracy. Similarly, the government's evidence that Ovalle served as a bus driver when he

knew various details about how the Lizma operation smuggled drugs was sufficient to allow a rational jury to find that Ovalle agreed to join the conspiracy. We thus affirm Defendants-Appellants' convictions on count two.

Additionally, the government presented sufficient evidence to allow a rational jury to convict Ovalle on count five, aiding and abetting others in the knowing possession with intent to distribute five kilograms or more of cocaine on or about May 23, 2006, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 18 U.S.C. § 2. First, the government presented ample evidence that the underlying offense occurred, as agents found 240 kilograms of cocaine bricks hidden in a Lizma bus, with stamps showing it was produced by one particular organization. Regarding the second part of the aiding and abetting offense–association, participation, and sharing of criminal intent–Ovalle admitted that he was a driver of the bus, and that he knew various details about how the Lizma operation smuggled drugs. This evidence was sufficient to allow a rational jury to convict Ovalle on count five.

Next, regarding Castillo's sentencing, we do not find plain error in the district court's imposition of a four-level leadership enhancement, nor in its failure to address the 18 U.S.C. §3553(a) factors and the specific characteristics Castillo raised warranting a downward variance.[3] Castillo's direction of the Houston end of the drug smuggling operation through Lizma constituted a leadership role under U.S.S.G. § 3B1.1(a), and a leadership enhancement was supported by the evidence presented at trial and recorded in the PSR. At the sentencing stage Castillo never challenged those facts on which the PSR relied. The district court's four-level leadership enhancement was not plain error. Castillo has also failed to show plain error with regard to her claims that the

---

[3] To the extent Castillo claims that plain error review does not apply, she is incorrect, since although she submitted a sentencing memorandum with mitigating factors before the hearing, she did not object to the PSR or to the district court's sentencing.

maximum sentences of life imprisonment for count one and 240 months of imprisonment for count two were substantively unreasonable and that the district court procedurally erred by failing to address the § 3553(a) factors Castillo claimed should have mitigated her sentence. The district court's sentence is presumptively reasonable because it falls within a properly calculated Guidelines range. *See United States v. Campos-Maldonado*, 531 F.3d 337, 338 (5th Cir.), *cert denied*, 129 S.Ct. 328 (2008). Castillo has not rebutted this presumption by showing that the district court failed to explain its reasoning or that the sentence was unreasonable in light of the § 3553(a) factors. Though the district court did not explicitly address each of the issues Castillo raised in her sentencing memorandum, the district court stated that it had read the memorandum, and stated that Castillo's advisory Guidelines range of imprisonment was life imprisonment. Nothing further is necessarily required. *See Rita v. United States*, 551 U.S. 338, 356 (2007). Moreover, there is no evidence that had the district court provided more explanation for its choice of a within-Guidelines sentence, the district court would have given Castillo a different sentence, and thus Castillo cannot show that the alleged error affected her substantial rights, as she must to succeed in her argument that the district court plainly erred. *See United States v. Mondragon-Santiago*, 564 F.3d 357, 365 (5th Cir. 2009) ("While a district court errs by failing to explain a sentence, the effect of that error on our review for reasonableness is diminished when the sentence is within the Guidelines range."). The district court did not plainly err in assessing Castillo's sentence.

We find no plain error with respect to Ovalle's claim that his sentence was substantively unreasonable. His sentence was within the Guidelines range, and Ovalle has done nothing to rebut our presumption that a within-Guidelines

8

sentence is reasonable. *See Rita*, 551 U.S. at 347, 351. Indeed, Ovalle's 300-month sentence was at the lower end of the Guidelines range.[4]

### III. CONCLUSION

For the aforementioned reasons, the judgments as to Castillo and Ovalle are in all things AFFIRMED.

---

[4] We note additionally that the district court did not impose a leadership enhancement to Ovalle's sentence.