# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-31308

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

JOHN WALLER,

Defendant–Appellant.

United States Court of Appeals
Fifth Circuit

**FILED**

March 25, 2015

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:12-CR-322-1

Before SMITH, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

John Waller, a federal inmate, was indicted for assaulting a fellow inmate with a dangerous weapon. Waller did not contest the underlying offense. Instead, he raised the defenses of duress and self-defense. The district court denied Waller's motions for judgment of acquittal, and the jury returned a guilty verdict. Waller appeals the denial of his motions for judgment of acquittal. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-31308

## I

Waller was initially convicted for a drug-related offense. He received a reduced sentence for cooperating with the Government and testifying against two other defendants.

At the time of the assault at issue, Waller and Robert Scott were inmates at United States Penitentiary, Pollock (Pollock). Shortly before the attack, Scott told other prisoners that Waller was a "snitch" due to his prior cooperation with the Government. At trial, a prison official testified that an inmate could be harmed if labeled a snitch.

Waller approached Nasir Ali with concerns about Scott's statements to other prisoners. They met in Ali's cell. Waller sat with his back to the cell door during the meeting. Ali testified that when the meeting began, he could see Scott sitting outside the cell watching television, but that before the meeting ended, Ali lost sight of Scott.

The attack occurred when the meeting ended. Waller testified that as he exited Ali's cell, Scott attempted to stab him, but he was able to disarm Scott and stab him back in self-defense. Ali admitted that the cell wall blocked his view of the attack, but he opined that Scott was the initial aggressor based on the distance between Scott's initial position watching TV and Ali's cell and the fact that the attack took place immediately after Waller walked out of the cell. When called to the stand, Scott denied that the entire incident took place, claiming he suffered from memory loss due to a gunshot wound to the head.

Jerry McKinney, an investigator at Pollock, interviewed Waller after the incident. McKinney testified that Waller told him that he "had to take care of [himself]" because Scott was endangering his safety by labeling him a snitch. McKinney also stated that Waller did not indicate in the interview that Scott had physically attacked him.

2

No. 13-31308

A prison security camera captured a portion of the incident, but the video does not show the start of the altercation. We briefly summarize the contents of the video here and provide a more detailed description below. As Waller and Scott move across the screen, Waller grips Scott with his left arm and stabs at Scott with his right arm, striking Scott in the torso and head. Scott then attempts to turn and run, but Waller maintains his grip and stabs Scott in the abdomen. Waller swings at Scott again, misses, and begins to fall. Scott turns back toward the fallen Waller, kicks free, and runs away.

Waller was indicted under 18 U.S.C. § 113(a)(3)[1] for assault with a dangerous weapon. Waller did not contest the elements of the offense. Instead, he attempted to raise the defenses of justification (more specifically, duress)[2] and self-defense. Waller moved for a judgment of acquittal[3] at the close of the Government's case-in-chief, at the close of defense evidence, and at the close of the Government's rebuttal. The jury returned a guilty verdict. Waller now appeals the denial of his motions for judgment of acquittal.

## II

We review the district court's denial of a motion for judgment of acquittal de novo, but "our review is narrow."[4] Ordinarily, we determine whether "a

---

[1] Section 113(a)(3) provides:

Whoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows: Assault with a dangerous weapon, with intent to do bodily harm, by a fine under this title or imprisonment for not more than ten years, or both.

[2] *See United States v. Posada-Rios*, 158 F.3d 832, 873 n.19 (5th Cir. 1998) ("While the defense of duress covered the situation where the coercion had its source in the actions of other human beings, the defense of necessity, or choice of evils, traditionally covered the situation where physical forces beyond the actor's control rendered illegal conduct the lesser of two evils." (quoting *United States v. Bailey*, 444 U.S. 394, 409-10 (1980))).

[3] *See* FED. R. CRIM. P. 29.

[4] *United States v. Williams*, 520 F.3d 414, 420 (5th Cir. 2008) (internal quotation marks omitted) (citation omitted).

3

rational jury could have found the essential elements of the offense[] beyond a reasonable doubt," viewing the evidence in the light most favorable to the Government.[5] However, when a motion for judgment of acquittal turns on a defense, the burden of persuasion on that defense determines our standard of review.[6] As explained below, a defendant must prove duress by a preponderance of the evidence, but for self-defense, once the defendant meets his initial burden of *production*, the Government has the burden of disproving self-defense beyond a reasonable doubt. Therefore, we may "reject the jury verdict" on duress grounds "only if no reasonable trier of fact could have failed to find that" duress "was established by" a preponderance of the evidence.[7] Likewise, we may overturn the verdict on self-defense grounds only if no reasonable jury could have found that the essential elements of self-defense were disproven beyond a reasonable doubt.[8] This court must "accept the jury's credibility determinations unless a witness's testimony is incredible or patently unbelievable."[9]

## III

Although self-defense and duress are similar in substance,[10] our case law makes clear that the burdens of production and persuasion differ for the two

---

[5] *Id.* (quoting *United States v. Pruneda-Gonzalez*, 953 F.2d 190, 193 (5th Cir. 1992)) (internal quotation marks omitted).

[6] *See United States v. Barton*, 992 F.2d 66, 68-69 (5th Cir. 1993).

[7] *See id.*

[8] *See id.*

[9] *Williams*, 520 F.3d at 420 (citing *United States v. Lopez*, 74 F.3d 575, 578 (5th Cir. 1996)).

[10] *Compare* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL CASES) § 1.36 (2012) (stating that a defense of "justification, duress, or coercion" arises when the defendant claims that he committed the acts charged "only because he was forced to commit the crime"), *with id.* § 1.36A (stating that self-defense involves a reasonable belief of the "immediate use of unlawful force" against the defendant).

defenses. In their briefs and at oral argument, both parties made substantial erroneous statements about the burdens. Therefore, before we reach the merits of the two defenses, we address the burdens of production and persuasion.

In *Dixon v. United States*, the Supreme Court addressed the burdens for duress.[11] Dixon argued that she should only have the burden of production on duress, and that once she satisfied the burden of production, the Government should be required to disprove duress beyond a reasonable doubt.[12] The Supreme Court disagreed, holding that "[i]n the context of the firearms offenses at issue—*as will usually be the case*, given the long-established common-law rule—we presume that Congress intended the petitioner to bear the burden of proving the defense of duress by a preponderance of the evidence."[13] Accordingly, Waller has the burden of proving duress by a preponderance of the evidence.

In contrast to *Dixon*, our decision in *United States v. Branch* plainly states that the defendant's burden on self-defense is only a burden of production: "If and only if the defendant has met his burden of *production*, the Government bears the burden of *persuasion* and must negate self-defense beyond a reasonable doubt."[14] In the present case, both parties state, contrary to *Branch*, that the defendant bears an "initial" burden of persuasion,

---

[11] 548 U.S. 1, 4 (2006).

[12] *Id.* at 4-5.

[13] *Id.* at 17 (emphasis added).

[14] 91 F.3d 699, 714 n.1 (5th Cir. 1996) (emphases added) (citing *United States v. Alvarez*, 755 F.2d 830, 842 n.12 (11th Cir. 1985)); *see also Dixon*, 548 U.S. at 24-25 (Breyer, J., dissenting) ("[F]ederal courts . . . have imposed the federal-crime burden of persuasion upon the prosecution in respect to self-defense . . . ."); *Mullaney v. Wilbur*, 421 U.S. 684, 702 n.30 (1975) (noting that the "majority rule" places the burden of persuasion for self-defense on the prosecution).

requiring the defendant to prove self-defense by a preponderance of the evidence before the burden shifts to the Government to negate self-defense beyond a reasonable doubt.[15] *Branch* only requires the defendant to produce "evidence sufficient for a reasonable jury to find in his favor"—a standard below a preponderance of the evidence—to meet his burden of production.[16]

Our decision in *Branch* preceded the Supreme Court's decision in *Dixon*, and one commentator has noted that "the allocation of the burden of proving self-defense in light of *Dixon* . . . is likely to be a topic of discussion in the near future."[17] However, we do not address this argument because the Government failed to explicitly raise it on appeal and did not preserve it in the court below. In the present case, we employ the burdens for self-defense set forth in *Branch*.

## IV

The duress defense requires the defendant to prove four elements by a preponderance of the evidence:

> (1) that the defendant . . . was under an unlawful and present, imminent, and impending threat of such a nature as to induce a well-grounded apprehension of death or serious body injury;
> (2) that he did not recklessly or negligently place himself in a situation in which it was probable that he would be forced to choose the criminal conduct;
> (3) that he had no reasonable legal alternative to violating the law, that is, he had no chance to refuse to do the criminal act and to avoid the threatened harm; and

---

[15] Appellant's Br. at 13; Gov't Br. at 15-16.

[16] *Branch*, 91 F.3d at 712 (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)).

[17] MODERN FEDERAL JURY INSTRUCTIONS–CRIMINAL § 8.08 cmt. & n.4 (2014); *see United States v. Leahy*, 473 F.3d 401, 405-09 (1st Cir. 2007) (assigning the burden of proof to the defendant on the "open question" of self-defense "with respect to felon-in-possession[-of-a-firearm] cases"); *United States v. Jumah*, 493 F.3d 868, 873 & n.2 (7th Cir. 2007) (stating that *Dixon* abrogated *United States v. Talbott*, 78 F.3d 1183, 1185 (7th Cir. 1996) (per curiam), which allocated the burden of disproving self-defense to the Government).

No. 13-31308

(4) that there was a direct causal relationship between the criminal action taken and the avoidance of the threatened harm.[18]

A reasonable jury could conclude that Waller failed to prove the imminent-threat element by a preponderance of the evidence.

Waller proffered evidence that Scott endangered him by telling other inmates that Waller was a snitch. A threat must be "present, imminent, and impending"[19] or "a real emergency leaving no time to pursue any legal alternative" to raise a valid duress claim.[20] A reasonable jury could conclude that this evidence only establishes that Waller faced a threat of future violence, not an immediate threat that would support a duress defense.

Waller also introduced evidence that Scott attacked first. Although an actual attack would likely constitute an imminent threat, a reasonable jury could conclude that Waller failed to prove that Scott was the initial aggressor. Two witnesses testified that Scott attacked first: Waller and Ali. A reasonable jury could discredit Waller's trial testimony because McKinney, the prison investigator, testified that during the post-attack interview, Waller failed to state that Scott attacked first. Additionally, Waller's trial testimony could be discredited as self-serving.[21] Ali testified that Scott was the initial aggressor, but he stated that he did not actually see who struck the first blow. Although Ali explained that he inferred that Scott attacked first based on the surrounding circumstances, a reasonable jury was not required to give credence to Ali's inferences. Accordingly, a reasonable factfinder could

---

[18] *United States v. Montes*, 602 F.3d 381, 389 (5th Cir. 2010) (citing *United States v. Willis*, 38 F.3d 170, 175 (5th Cir. 1994)).

[19] *Id.* at 389.

[20] *United States v. Posada-Rios*, 158 F.3d 832, 874 (5th Cir. 1998).

[21] *Cf. id.* at 874 (noting, under the no-legal-alternative element of duress, that a defendant's self-serving testimony could be discredited).

7

No. 13-31308

conclude that Waller failed to prove that Scott attacked first. We cannot overturn the jury's verdict on duress grounds.

## V

Assuming *arguendo* that Waller met his burden of production on self-defense, a reasonable jury could conclude that the Government negated self-defense beyond a reasonable doubt. Self-defense requires a person (1) to "reasonably believe[] that force is necessary for the defense of oneself . . . against the immediate use of unlawful force" and (2) to "use no more force than appears reasonably necessary under the circumstances."[22] Even if Scott was the initial aggressor, such that Waller was justified in responding with force, a reasonable jury could conclude that Waller forfeited his right to self-defense by using more force than appeared reasonably necessary.

Waller provided the following account of the attack:

I was exiting [Ali's] cell to go out the unit. And on my left side, I seen somebody come at me. So I automatically—coming down with an object, and I blocked it.

. . .

I seen somebody coming at me with a stabbing move, so I automatically blocked it and my instincts take over. I automatically try to grab the hand that has something in it. So I always—always go to that hand because that's the hand that could hurt me. So that's what I did, you know.

Waller added that once he blocked Scott's attempt to stab him, he was able to take the knife from Scott, as he was "much bigger" than Scott. He explained what happened in the portion of the altercation captured on the video:

That was me getting ground—getting my ground back, and I was in the passion, in the heat of the altercation.

. . .

---

[22] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL CASES) § 1.36A (2012); *see United States v. Ramos*, 537 F.3d 439, 465 (5th Cir. 2008) (approving of the self-defense instruction); FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL CASES) § 1.36A note (indicating that the court in *Ramos* used the pattern self-defense instruction).

No. 13-31308

[O]nce I got the knife, I was . . . in survival mode. I was just
. . . going off my instincts.

Although Waller's explanation of the video is not implausible, a reasonable jury could draw a different conclusion about the amount of force used.

The video, which the jury saw, begins mid-fight. Even assuming that Scott initiated the attack wielding a knife, and we assume *arguendo* that Scott employed significant force against Waller, such that Waller was initially permitted to respond with significant force after recovering the knife, a reasonable jury could nonetheless conclude, beyond a reasonable doubt, that Waller's use of force turned excessive. Waller stabbed Scott twice striking him in the head and abdomen, and this may have been a justifiable response to an attack. However, after Waller had stabbed Scott the second time, the video shows Scott turning and trying to run from Waller. A reasonable jury could determine that a reasonable person in Waller's position would no longer believe that Scott posed a significant threat, as Scott had begun to flee. Accordingly, a jury could conclude, beyond a reasonable doubt, that Waller's decision to stab Scott again in the abdomen constituted greater force than appeared reasonably necessary for self-defense. We cannot reverse Waller's conviction based on self-defense.

\*     \*     \*

For the foregoing reasons, we AFFIRM the judgment of the district court.

9