# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-30207

United States Court of Appeals
Fifth Circuit

**FILED**
January 7, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

ALDEN HALL,

      Defendant - Appellant

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:16-CR-102-1

Before JONES, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

A jury convicted Alden Hall of theft of government funds under 18 U.S.C. § 641, fraudulently obtaining financial assistance funds under 20 U.S.C. § 1097(a), and engaging in an unlawful monetary transaction under 18 U.S.C. § 1957. Hall appeals, contending there was insufficient evidence to convict.

Hall owned and operated Alden's School of Cosmetology (ASC) and Alden's School of Barbering (ASB). She sought and obtained certification for some of ASC's programs to participate in the Pell Grant program. Hall does

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

not dispute that ASC fraudulently obtained Pell Grant funds, receiving distributions for ineligible students and individuals who never attended ASC and inflating the number of hours attended by students to increase the funds paid on their behalf. Hall argues that the government did not present enough evidence to prove her knowledge of and involvement in the fraudulent scheme.

A district court's denial of a motion for judgment of acquittal is reviewed de novo. *United States v. Williams*, 520 F.3d 414, 420 (5th Cir. 2008). Nevertheless, when reviewing a sufficiency of the evidence claim, the court must determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). All the evidence must be viewed "in the light most favorable to the prosecution." *Id.* In other words, "this Court's inquiry is limited to whether the jury's verdict was reasonable" and not whether the court believes it was correct. *United States v. Alaniz*, 726 F.3d 586, 601 (5th Cir. 2013) (quotation omitted).

There was sufficient evidence for a jury to find that Hall was involved in and knew about the Pell Grant fraud. First, there was evidence that she was the sole owner of ASC, and the only person who stood to benefit from the fraud. *See United States v. Gevorgyan*, 886 F.3d 450, 456 (5th Cir. 2018) (finding that the defendant's position as owner of a company involved in health care fraud supported the jury's determination that he knew of the fraud); *United States v. Willett*, 751 F.3d 335, 340–41 (5th Cir. 2014) (finding that the trier of fact could infer the defendant knew about fraudulent practices because "he held himself out as an owner of and had a position of authority" in the companies involved in the fraud and because there was "evidence that [he] benefitted from the fraud as the joint holder of the personal and business accounts").

Hall contends there was evidence she no longer owned or controlled the schools when the fraud took place. There was testimony from school staff that

they were told at some point a business consultant either was planning to buy or had bought the school. The consultant was also copied on one Department of Education (DOE) email to Hall and fired two staff members—one of whom was rehired by Hall four months later. Meanwhile, the government introduced evidence showing Hall, at the very least, held herself out as ASC's owner. *See Willett*, 751 F.3d at 340. She signed multiple documents identifying herself as ASC's owner. She controlled the bank account for the Pell Grants and, with another consultant Michael Smith, jointly controlled ASC's operating account. And Hall dealt with the DOE and a third-party financial aid contractor until the school closed in 2012.

There was also evidence that Hall was involved in and knew about ASC's financial aid process. An ASC financial aid staff member testified that no financial aid documents were signed without Hall's permission. In addition, Hall spoke with the contractor multiple times a week, and received reports each time Pell Grant funds were distributed to ASC, which included student names and payment amounts.

There was also evidence of Hall's involvement in the fraudulent activity itself. She incorrectly told prospective students that they could receive financial aid for programs not approved for Pell Grants; refused to fully refund Pell Grant funds received for a student who applied to ASC but never attended; and signed various reports falsely certifying that ASB students or other individuals who never attended ASC earned hours at ASC that resulted in Pell Grant distributions.[1] ASC also fraudulently obtained Pell Grant funds in the name of Hall's family members, none of whom attended the school.

---

[1] Hall contends the government should have called a handwriting expert to confirm she actually signed these documents. However, Hall's signatures were authenticated by witnesses familiar with her signature, and "juries are capable of comparing signatures to determine authenticity." *United States v. Garza*, 448 F.3d 294, 300 (5th Cir. 2006).

No. 18-30207

Finally, there was evidence that Hall attempted to conceal the existence of ASB and its students—for whom ASC was illegally collecting Pell Grant funds—from the DOE. *See United States v. Kuhrt*, 788 F.3d 403, 414–15 (5th Cir. 2015) (finding that evidence of actions taken to conceal theft supported an inference of fraudulent intent). When DOE employees conducted an on-site review of ASC, Hall gave ASB teachers the week off and passed off ASB students as ASC students. Hall also told the reviewers that she had no barbering students. Viewing this multitude of evidence in the light most favorable to the prosecution, a reasonable jury could have found that Hall knew about and was involved in ASC's fraudulent behavior.

Hall also takes issue with the evidence supporting her unlawful monetary transaction conviction. Hall was charged with issuing a $50,000 check from ASC's operating account to herself, which necessarily included fraudulently obtained Pell Grant funds. After several transactions, the money was eventually wired to another bank account and used as security to obtain further Pell Grant money for ASC. Hall contends that evidence of Smith (the consultant who jointly controlled the ASC operating bank account) initiating the wire transaction undermines evidence of her involvement. However, the charge addressed the initial check transferring funds from ASC to Hall. Hall does not argue that she did not authorize or cash that check. There was sufficient evidence for a reasonable to jury to find that Hall knew about and was involved in the unlawful monetary transaction.

In light of the foregoing, Hall's conviction is AFFIRMED.

4